UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------x

Cintas Corporation,                                    Civ. A. No.

        Plaintiff,

        -against-

ImageFIRST Healthcare Laundry Specialists,

        Defendants.

------------------------------------------------------------x

## COMPLAINT

1.      Plaintiff Cintas Corporation ("Cintas"), by and through its undersigned attorneys, Proskauer Rose LLP, as and for its Complaint against defendant ImageFIRST Healthcare Laundry Specialists Inc. ("ImageFIRST" or "Defendant"), alleges as follows:

## INTRODUCTION

2.      Cintas, a leading provider of business-support services, especially uniform rental and related facility services, since 1929, brings this action for injunctive relief and damages arising from Defendant's scheme to gain an unlawful and unfair advantage over Cintas in the marketplace. ImageFIRST effectuated this scheme by inducing Cintas employees to flagrantly and maliciously breach their agreements with Cintas, steal confidential and proprietary information from Cintas, and violate their duty of loyalty to Cintas.

3.      Upon information and belief, ImageFIRST has initiated a systematic plan to recruit and hire Cintas's key employees nationwide. Specifically, the scheme began when former Cintas Vice President of Sales and 20-year employee of Cintas, Dave Hilderbrand, left Cintas for ImageFIRST. Hilderbrand now serves as Chief Commercial Officer at ImageFIRST

and has been in that role as Defendant's scheme has unfolded and intensified. During his tenure at Cintas, Hilderbrand received specialized training and possessed sensitive information regarding products, services, costs, pricing structures, strategies, operations, plans, marketing, software, logistics, data, organizational structures, contractors, vendors, suppliers, customers, and clients. Just prior to leaving Cintas, Hilderbrand sent several documents containing confidential and proprietary Cintas information from his Cintas email account to his personal email account.

4.     Since Hilderbrand left Cintas, at least eleven other formerly dedicated employees have left for Defendant, taking their specialized training and knowledge of trade secrets with them, in some instance in violation of their agreements with Cintas. These individuals included vice presidents, sales directors, regional leaders, and major account managers responsible for some of Cintas's largest and most strategically important healthcare relationships. Many of these employees had more than a decade of tenure at Cintas, and all had access to non-public information that Cintas protects as trade secrets. These former employees include, at least:

    a)  Brian Brosnan

    b)  Shelby Ray

    c)  Nellie Lunetta

    d)  Ryan Hartzheim

    e)  Mikael Zuidema

    f)  Parrish Pisiona

    g)  Edgar Sandoval

    h)  Jamal Pierce

    i)  Fadi Beshwati

j)  Tatum Garrity

k)  Steve Browne

5.      The pattern of departures cannot be coincidental.  Multiple employees misled Cintas during their resignations by denying they were joining a competitor, lying about receiving job offers, or taking personal or medical leave under false pretenses—even when communications show they had already accepted job offers or were in active employment discussions with ImageFIRST.  Some employees forwarded confidential Cintas materials to personal accounts or removed or accessed internal presentations, financial information, or other confidential information immediately before departure.  These actions reflect not only individual breaches of contract and confidentiality obligations, but a coordinated strategy engineered and encouraged by ImageFIRST to obtain Cintas's confidential information and trade secrets.

6.      ImageFIRST's inducements were substantial.  In at least one instance, ImageFIRST offered nearly $1 million in signing compensation to secure a high-level Cintas executive, who then immediately began serving as ImageFIRST's Vice President of Sales for the Northeast and Massachusetts region.  On information and belief, ImageFIRST has repeatedly offered inflated compensation, signing bonuses, relocation packages, and other incentives to lure Cintas's most experienced employees, knowing full well that these individuals were bound by confidentiality agreements and restrictive covenants and had knowledge that would materially and unfairly benefit ImageFIRST in the national healthcare market.  Cintas has also been made aware that recruiters working on ImageFIRST's behalf have told Cintas employees that ImageFIRST will cover all attorney's fees if Cintas sues them after their departure.

7.      Cintas has been deeply disturbed upon learning of ImageFIRST's scheme and realizing that so many of its formerly long-tenured employees had been convinced and

improperly induced to violate their agreements with Cintas and/or their legal obligations at the behest of ImageFIRST. As an example, upon information and belief, David Hilderbrand violated his non-disclosure covenant. Similarly, Nellie Lunetta violated both Cintas's Return of Employer Property and Return of Confidential Material and Information covenants when she emailed herself confidential documents from Cintas. Ultimately, Cintas suffered irreparable harm based on all employees lost to ImageFIRST who share confidential information and violate their restrictive covenants.

8.      However, Hilderbrand and Lunetta's thefts of materials are just the beginning of the harm suffered by Cintas. Various trade secrets have already been misappropriated or will be shortly. Cintas's departing employees possessed and, in several instances, removed highly sensitive and competitively valuable trade secrets, including national account pricing, GPO and IDN contracting strategies, customer specific proposals, internal training systems, and proprietary marketing and product offering materials. These assets were developed at great expense by Cintas and reflect decades of institutional investment. Knowledge of these trade secrets would provide a competitor with immediate and unfair advantage in the national market. Cintas fears that ImageFIRST's use of Cintas's trade secrets and confidential information to gain an unfair competitive advantage will cause lasting irreparable harm to Cintas.

9.      Additionally, these trade secrets are not freely or publicly available. Cintas assiduously guards and protects its trade secrets and proprietary information, and they are only for the use of Cintas in the course of its business. Cintas maintains robust systems for protecting its confidential information and trade secrets, including strict confidentiality agreements, role-based access controls, data and security protocols, and policies that govern graduated information access as employees ascend into senior leadership. For example, only officers and

4

national account personnel hold access to highly restricted pricing structures, contracting models, and internal training materials. Cintas safeguards this type of information as core competitive assets.

10.     As a direct and foreseeable result of ImageFIRST's conduct, Cintas has suffered and continues to suffer irreparable harm, including loss of key leadership personnel, erosion of competitive advantage, exposure of proprietary information, impairment of customer relationships, and significant business disruption within a high-stakes market segment. Monetary damages alone cannot remedy the harm because the misappropriated trade secrets are deeply embedded and not easily quantifiable, and the risk of future misuse is ongoing.

## THE PARTIES

11.     Cintas is a Washington Corporation with its principal place of business located in Mason, Ohio.

12.     Upon information and belief, ImageFIRST is a citizen of the state of Pennsylvania with its principal place of business located in King of Prussia, Pennsylvania.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00 excluding interest and costs.

14.     Additionally, this Court has original subject matter jurisdiction under 28 U.S.C. § 1331 because this action involves a claim arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, *et seq.*, and supplemental jurisdiction under 28 U.S.C. § 1367 because all the claims are so intrinsically related that they together form part of the same case or controversy.

15.     This Court has personal general and specific jurisdiction over ImageFIRST and venue is proper in this District because ImageFIRST's conduct originates from and is directed by senior executives and corporate officers located at its headquarters within this District. Decisions to target Cintas's employees, offer supracompetitive compensation packages (including covering attorney's fees for litigation against Cintas), and onboard departing Cintas personnel in violation of their restrictive covenants were made or ratified in Pennsylvania. ImageFIRST has used this District as the command center for its unlawful campaign to obtain Cintas's confidential information, disrupt its business relationships, and tilt competitive conditions in the national market.

## FACTUAL ALLEGATIONS

16.     Cintas is a national provider of business support services, including uniform, linen, and facility services.  Within Cintas, the healthcare division is one of Cintas's fastest-growing and most strategically important business segments.  Cintas provides uniform, linen, and related facility services—including scrubs, lab coats, privacy curtains, bed linens, towels, and related textile products—to hospitals, health systems, and medical facilities nationwide.

17.     The healthcare market represents a significant portion of annual revenue for Cintas.  Cintas has invested decades of financial, operational, and intellectual capital developing its sales processes, service models, pricing architecture, training systems, vendor relationships, logistics structure and operations, and customer-specific implementations for this market.  Much of this information is proprietary, non-public, and economically valuable trade secrets.

18.     The industrial laundry industry is extremely competitive, with many providers across the nation.  ImageFIRST is a major Cintas competitor in the healthcare space, and is the

fastest growing national provider of these services.  This dynamic makes the protection of confidential information and the retention of experienced personnel critically important.

19.    ImageFIRST is headquartered within the Eastern District of Pennsylvania.  Its executive leadership, including its CEO, senior sales executives, and strategic growth personnel, among others, operate from or report into the Pennsylvania headquarters.  Upon information and belief, decisions related to recruiting, compensation packages, and competitive strategy originate from this District.

20.    Beginning in 2024 and continuing into 2025 and to the present, ImageFIRST embarked on an aggressive campaign to recruit Cintas's most experienced and strategically important employees nationwide.  On information and belief, ImageFIRST's senior executives approved a targeted strategy to hire away Cintas personnel with deep knowledge of Cintas's healthcare business, pricing methodologies, customer relationships, operational practices, sales playbooks, and strategic models.

21.    During this period, at least eleven Cintas employees left Cintas to join ImageFIRST.  These employees included vice presidents, regional sales leaders, sales directors, major account managers, and national account personnel.  Each of these individuals had significant tenure at Cintas, extensive access to confidential information, and strategically relevant responsibilities.

## IMAGEFIRST'S RECRUITMENT OF CINTAS VICE PRESIDENT DAVE
## HILDERBRAND AND RESULTING MISAPPROPRIATION

22.    In August 2024, Hilderbrand, a long-tenured Cintas Vice President of Sales, resigned from Cintas and immediately joined ImageFIRST as its Chief Commercial Officer. This role sits at the top of ImageFIRST's sales organization and oversees nationwide strategy.

23.    As a condition of Hilderbrand's employment at Cintas and by virtue of his key role and access to highly confidential information, he was required to enter into various employment agreements over the course of his employment containing, *inter alia*, certain restrictive covenants.  The most recent employment agreement is from June 2023.  A true and correct copy of this employment agreement is attached hereto as **Exhibit A**.

24.    At the time of his resignation, Hilderbrand falsely told Cintas that he had saved enough money and intended to "take time off" and that he had no plans to join a competitor, which would include ImageFIRST.  These representations were false.

25.    Forensic investigation later revealed that, before resigning, Hilderbrand sent multiple Cintas documents, including customer presentations, product offerings, presentations and other relevant emails and files to his personal email account.  Significant company time and resources went into Cintas's creation of each of these documents, and none are publicly available in their entirety.

26.    While some of the materials Hilderbrand misappropriated are client-facing, Cintas is careful to provide each client or prospective client with only the relevant promotional or informational materials.  Hilderbrand misappropriated master, comprehensive copies that contained Cintas's entire portfolio of offerings.  Cintas has never and would never make this entire document public.  If a third-party wanted to assemble all the component parts of the

brochure, it would need to collect all the various sections shared with different clients.  And a third-party would have no way of knowing whether it had actually collected the entire document.

27.    Cintas initiated arbitration against Hilderbrand in October 2024 for breach of his employment agreement and for the misappropriation of trade secrets.  That arbitration remains pending.

28.    Upon information and belief, ImageFIRST knowingly recruited and employed Hilderbrand despite his contractual restrictions, despite his access to highly confidential information, and despite circumstances strongly indicating misappropriation.

## IMAGEFIRST'S RECRUITMENT OF ADDITIONAL CINTAS EMPLOYEES FOLLOWING HILDERBRAND'S HIRE

29.    Following Hilderbrand's departure, ImageFIRST escalated its efforts to recruit Cintas personnel.  ImageFIRST's hiring of additional Cintas employees occurred in rapid succession, in multiple states, and in functions directly affecting nationwide healthcare operations.  Cintas's investigation into these employee departures remains ongoing.

30.    In February 2025, Brian Brosnan, a 16-year Cintas veteran and former Service Training Director, joined ImageFIRST as its Vice President of Sales for the Northeast. Brosnan's most recent employment agreement with Cintas is dated July 2, 2024.  A true and correct copy of Brosnan's agreement is attached hereto as **Exhibit B**.

31.    Brosnan started interviewing and meeting with ImageFIRST at least as early as December of 2024.

32.    ImageFIRST paid Brosnan a signing bonus approaching $1 million, an extraordinary sum far beyond market norms for the position.  On information and belief, this compensation was specifically intended to induce breach of his contractual obligations and to

secure his extensive knowledge of Cintas's sales processes and training methodologies, with a focus on the northeast region, a major market for Cintas.  In fact, after receiving his offer from ImageFIRST and putting in his two weeks' notice, Brosnan attended a tour of a Cintas plant in Portland, ME that services healthcare customers and requested to leave with samples of Cintas products as well as their scrub marketing boxes, none of which were necessary for him to complete his job during his remaining time at Cintas.  On information and belief, Brosnan intended to bring these samples with him to ImageFIRST.

33.    Moreover, the largest customer for Cintas's Portland, ME location is InterMed Healthcare System.  Cintas has actively competed with ImageFIRST for InterMed's business and the healthcare system is a known prospect for ImageFIRST.  During this tour, Brosnan gained first-hand knowledge of Cintas's plant layout, operations, and unique approach to servicing flat linens (a product also sold by ImageFIRST) for InterMed.  This information is all proprietary, and highly relevant to ImageFIRST.

34.    Cintas commenced arbitration against Brosnan for breach of his employment agreement.  That matter remains pending.

35.    In March 2025, Shelby Ray, Cintas's former Director of Sales Training, joined ImageFIRST as its Vice President of Sales Training.  Due to her high-ranking position, Ray had intimate knowledge of Cintas's trade secrets, including but not limited to Cintas's training platforms, learning management systems, sales-enablement tools, and proprietary methodologies. Ray's most recent employment agreement with Cintas was entered into on August 14, 2023.  A true and correct copy of that agreement is attached hereto as **Exhibit C**.  Cintas has initiated arbitration against Ray for breach of her employment agreement.  That arbitration has settled.

36.     In October 2025, Nellie Lunetta, a Major Account Manager for Healthcare, resigned and joined ImageFIRST.  Prior to her departure, Lunetta was a very high performer— she was named Cintas's Healthcare Major Account Manager of the Year—and was on the front lines of Cintas's rapidly-growing non-acute healthcare business.  Lunetta had a national accounts role, in which she had access to: Group Purchasing Organization contracts and pricing, customer-specific pricing and information, contracting structures and strategies, and national account development materials, among other sensitive information.

37.     ImageFIRST historically has lacked a national account presence and is in the process of creating a team to sell these accounts.  This information, which Cintas has dedicated significant time and resources to create and protect, along with Lunetta's personal knowledge of Cintas Healthcare National Accounts and GPOs, has further enabled ImageFIRST to build a team which competes with Cintas for this large, lucrative customer base utilizing Cintas's trade secrets, proprietary and confidential information.

38.     A forensic analysis of Lunetta's computer activity shows that, on her last day at Cintas and while per personal email address was open in her web browser, Lunetta accessed, on Cintas's password protected systems, confidential Cintas documents and trade secrets that were no longer necessary for her to perform her role at Cintas.  For example, she accessed Cintas's book pricing and pricing calculators for GPO accounts, profitability analysis and current customer pricing for GPO accounts, and contract language related to Cintas and GPO agreements, among others.  On information and belief, Lunetta used her personal email to remove these documents from Cintas's system.

39.     Moreover, Lunetta falsely stated after submitting her notice of resignation that she did not have another job lined up, but she interviewed and received a job offer from

ImageFIRST—a job offer that was sent directly to her Cintas email—prior to submitting her notice of resignation.  She also submitted paperwork to take medical leave one day after interviewing with ImageFIRST in an effort to frustrate efforts by Cintas to retain her or learn about her new employment and thus take reasonable measures to protect its trade secrets and confidential information.  These representations were knowingly false, and her actions were consistent with a pattern of ImageFIRST-coached concealment and misrepresentation, clearly done to harm Cintas, obscure ImageFIRST's campaign against Cintas, and steal Cintas's trade secrets.

40.      In November 2024, Ryan Hartzheim, formerly a Global Account Manager at Cintas, joined ImageFIRST as Regional Vice President of Sales for the West Coast.  As a Global Account Manager, Hartzheim had access to Cintas's largest national relationships and strategic pricing models.  Another top performer for Cintas, Harzheim has directly recruited current Cintas employees to join ImageFIRST.  He received a $100,000 increase in his base salary to move to ImageFIRST and refused to give Cintas an opportunity to make a counteroffer to keep him.  A copy of his employment agreement is attached as **Exhibit D.**

41.      In September 2024, Mikael Zuidema, a Major Account Manager at Cintas, joined ImageFIRST as a sales representative.  Zuidema entered into an employment agreement with Cintas on August 22, 2023.  A true and correct copy of that agreement is attached hereto as **Exhibit E.**  Cintas initiated arbitration against Zuidema following his departure for ImageFIRST. That arbitration has ended in a settlement.  Although Zuidema later left ImageFIRST, his recruitment and transition align with the broader pattern of competitive targeting and attempts to steal trade secrets and confidential information.

42.    In August 2024, Steve Browne left his employment at Cintas in New Jersey. Browne held various sales roles over his eight years at Cintas, leaving as Major Account Manager covering Manhattan, Brookly, Queens, and Long Island.  A copy of his employment agreement with Cintas is attached hereto as **Exhibit F**.  Browne was a top-tier sales representative for Cintas.  Browne subsequently joined ImageFIRST as a Regional Sales Manager.

43.    In January 2025, Parrish Pisiona, a Cintas Sales Manager, joined ImageFIRST as its Director of Hospital Sales.  Parrish worked in California and oversaw major Cintas healthcare accounts prior to his departure to ImageFIRST.  Upon information and belief, Pisiona is currently employed at ImageFirst in a role in which he will likely use Cintas's trade secrets and confidential information to harm Cintas.

44.    On October 31, 2025, Edgar Sandoval, a 23-year Cintas veteran who held various sales roles, resigned and joined ImageFIRST as a Regional Sales Manager.  Sandoval interviewed with several former Cintas employees who had similarly left for ImageFIRST. Sandoval resisted participating in an exit interview, following the pattern of ImageFIRST-recruited employees being uncooperative in their departure from Cintas and depriving Cintas of the opportunity to try to retain those employees and prevent the theft of its trade secrets and confidential information.

45.    Prior to his departure, Sandoval sent himself several confidential Cintas documents, including a sales recruiting messaging memorandum and sales scripts, a Group Purchasing Organization recruiting presentation, and several sales forecasting tools.  One of the confidential materials Sandoval misappropriated contained Cintas compensation structure for sales representatives, including detailed information on their bonus criteria.  These materials and

information are highly valuable to Cintas, and significant company resources and expertise went into their development.  The information is not known or readily ascertainable by Cintas's competitors, and Cintas employs considerable measures to keep it confidential.  Possession of this information will give ImageFIRST a considerable and unfair advantage in the marketplace.

46.    In November 2025, Fadi Beshwati and Jamal Pierce, both Sales Service Representatives for Cintas, joined ImageFIRST with an offer to earn a flat 10% commission, with routes that are made up of $25,000 in volume, a significant increase over the compensation they received from Cintas.  These arrangements are consistent with ImageFIRST utilizing the confidential information it has wrongfully acquired to overpay for Cintas's employees, trade secrets, and other know-how.

47.    In November 2025, Tatum Garrity joined ImageFIRST.  Garrity worked with both Shelby Ray and Dave Hilderbrand while at Cintas.  Garrity's current employment agreement is dated September 2, 2025.  A true and correct copy of this agreement is attached hereto as **Exhibit G**.

48.    Prior to her departure, Garrity sent a "brag book" to ImageFIRST highlighting non-acute and healthcare customers she was involved with at Cintas—the very same type of customers ImageFIRST hopes to poach from Cintas.  The materials Garrity misappropriated also reveal Cintas's confidential criteria for evaluating its sales representatives and lists Cintas's top performing sales representatives.  While the fact that a specific person works for Cintas is publicly available and not a trade secret, who Cintas's top sales representatives are, how much they are selling, and what their goals are for each product is highly confidential and sensitive information that is not publicly available.  Knowing this information, ImageFIRST will have an unfair advantage in its efforts to recruit away Cintas's essential personnel and harm Cintas.

Cintas's criteria and incentives for sales performance took years and significant company resources and knowledge to develop. They are extremely valuable to Cintas and not generally known or readily ascertainable by others who could obtain economic value from their disclosure. As detailed below, Cintas takes reasonable measures to guard the secrecy of this information.

49.     Cintas is continuing its investigation into these employee departures.

## PATTERN OF MISREPRESENTATION, CONCEALMENT, AND INFORMATION THEFT

50.     Across these departures, a consistent pattern emerged: (a) employees falsely denied joining ImageFIRST when asked directly; (b) employees claimed they had "no future employment" despite having accepted offers; (c) employees scheduled interviews or onboarding meetings with ImageFIRST during working hours and by using Cintas email accounts; (d) multiple employees forwarded confidential documents and information, including but not limited to pricing information, customer materials, or internal presentations, to personal email addresses immediately before departure; (e) employees attempted to obscure their departure timelines by invoking medical or personal leave pretextually; and (f) compensation packages offered by ImageFIRST were unusually large and structured to induce immediate transition.

51.     On information and belief, ImageFIRST instructed or encouraged departing employees to conceal their recruitment and new roles, to take or retain Cintas documents, and to minimize Cintas's ability to protect its confidential information. All of this occurred while Defendant conspired with the departing employees to violate their contractual obligations and duties of loyalty to Cintas. ImageFIRST has even gone so far as to promise to cover attorney's fees for departing employees in litigation against Cintas.

52. Overall, this pattern is too uniform, too consistent, and too strategically aligned to be the product of coincidence. It reflects a deliberate effort by ImageFIRST to obtain Cintas's confidential information and trade secrets while avoiding contractual enforcement.

## IMAGEFIRST'S USE AND INTENDED USE OF CONFIDENTIAL CINTAS INFORMATION AND TRADE SECRETS

53. The diverse set of individuals poached by ImageFIRST from Cintas possessed trade secrets and confidential information about all aspects of Cintas's business. Cintas trade secrets misappropriated include pricing strategies, customer tiers, renewal cadence, operational strengths and weaknesses, RFP playbooks, field-execution processes, sales training materials, competitive analysis, Group Purchasing Organization contracting information, operational best practices, branding assets, sales representative performance criteria and top performers, marketing plans, high value strategic material, and national account infrastructure.

54. This information is economically valuable to ImageFIRST because it enables ImageFIRST to: (a) undercut Cintas's pricing; (b) target Cintas's highest-value customers; (c) replicate Cintas's proprietary training models; (d) further accelerate ImageFIRST's national expansion at Cintas expense; (e) respond strategically to Cintas's proposals, bids, and renewals; (f) improve ImageFIRST's internal processes and operations using Cintas's work product and industry know-how; and (g) poach Cintas's top performing sales representatives.

55. ImageFIRST knew, or should have known, that each employee was bound by confidentiality obligations, non-disclosure and other restrictive covenants, and/or duties of loyalty. ImageFIRST nonetheless hired these individuals into roles where their Cintas-derived knowledge would inevitably influence competitive decision-making. Upon information and

belief, ImageFIRST is using misappropriated information to compete for accounts where Cintas has spent years building relationships.

56.     ImageFIRST's conduct constitutes actual or threatened misappropriation of trade secrets, intentional interference with contracts and relationships, unfair competition, and unlawful conspiracy.

## STEPS TAKEN BY CINTAS TO GUARD TRADE SECRETS

57.     Cintas employs layered and comprehensive measures to safeguard its confidential information and trade secrets.  All employees are required to execute confidentiality agreements, and senior sales and national-account personnel are subject to heightened obligations.  Cintas maintains written confidentiality policies, access control protocols, and security procedures that restrict sensitive materials to individuals with a legitimate business need.  Information relating to national accounts, pricing models, GPO strategy, and proprietary training systems is limited to a narrow group of high-level personnel and cannot be accessed without appropriate permissions. Generally, confidential information is siloed, so employees can only access information and materials relevant to their roles.

58.     As employees advance into director, vice president, or officer roles, their access rights expand, and they are entrusted with access to a broader scope of information, including strategic pricing structures, national-account strategies, and sensitive customer frameworks among other information.  Cintas further safeguards information through digital controls, email monitoring, historical retention systems, and forensic-review capabilities.  Cintas also employs strict requirements for departing employees to return Cintas confidential and proprietary materials.

59.     In several instances, discovery from prior proceedings captured unauthorized transfers of confidential materials, including emails forwarding pricing proposals, presentations, and marketing assets to personal accounts.  Cintas continues to strengthen its controls in response to the pattern of misconduct by departing employees and ongoing competitive threats posed by ImageFIRST.

## COUNT I

## ACTUAL AND/OR THREATENED MISAPPROPRIATION OF

## TRADE SECRETS, 18 U.S.C. § 1836(b)

60.     The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

61.     Cintas owns, possesses, and maintains protectable "trade secrets" within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).  These trade secrets include, but are not limited to, non-public information relating to Cintas's pricing methodologies, competitive bid strategies, customer-specific requirements, national/global account structures, sales processes, operational models, training programs, internal presentations, market analyses, product composition data, supply-chain practices, financial performance metrics, employee performance criteria, and other confidential business information developed at substantial expense over many years.

62.     These trade secrets derive independent economic value from not being generally known to, or readily ascertainable by, competitors and the general public.  Access to such information would provide a competitor with a substantial and unfair advantage in pricing, bidding, sales strategy, customer acquisition, operational execution, employee recruitment, and national-market expansion at the expense of Cintas.

18

63.     Cintas takes reasonable steps to maintain the secrecy of this information, including requiring employees to sign confidentiality and non-disclosure agreements, restricting access to sensitive materials through password protection, role-based access controls, and internal data-security systems.  Cintas also requires training on confidentiality obligations and best practices for limiting distribution of proprietary documents to personnel on a need-to-know basis even within Cintas.

64.     The aforementioned confidential and proprietary information and trade secrets relate to products and services used in, or intended for use in, interstate or foreign commerce.

65.     ImageFIRST knowingly obtained, used, or threatened to use Cintas's trade secrets through the hiring and inducement of multiple long-tenured Cintas employees who possessed such information and were bound by contractual and/or statutory confidentiality obligations.

66.     Prior to their departures, several of these employees, including, without limitation, Hilderbrand, Brosnan, Lunetta, Sandoval and Garrity, accessed, downloaded, forwarded, or retained confidential Cintas materials without authorization and in violation of their contractual duties and/or duty of loyalty.

67.     Upon information and belief, ImageFIRST acted with actual or constructive knowledge that these employees were bound by confidentiality agreements and/or that their unauthorized acquisition or use of Cintas's proprietary information would violate both federal and state law.

68.     By offering extraordinary, supracompetitive financial inducements, coaching employees on concealing their future employment at ImageFIRST, encouraging circumvention of contractual obligations, and placing former Cintas employees into roles where their Cintas-

derived knowledge would inevitably guide competitive decision-making, ImageFIRST has acquired, used, or is threatening to use Cintas's trade secrets without the consent of Cintas.

69.    ImageFIRST's conduct constitutes both actual misappropriation and threatened misappropriation within the meaning of 18 U.S.C. § 1839(5), including: (a) the acquisition of trade secrets by persons who knew or had reason to know that such information was obtained through improper means; and (b) the use or threatened use of such trade secrets by ImageFIRST, knowing that the information was improperly acquired or inappropriately disclosed.

70.    ImageFIRST's misappropriation was willful and malicious.  Its actions reflect a coordinated competitive strategy directed by senior executives, aimed at accelerating ImageFIRST's growth by exploiting Cintas's proprietary information.

71.    Cintas has suffered, and continues to suffer, irreparable harm as a direct result of ImageFIRST's misappropriation, including loss of competitive standing, erosion of customer relationships, impairment of goodwill, exposure of strategic information, and the risk of further misuse of its trade secrets.  This harm will be felt nationally, as it appears that ImageFIRST has used and intends to continue to use the stolen information to accelerate its market position in the healthcare industry.

72.    Unless enjoined, ImageFIRST will continue to use, disclose, or otherwise misappropriate Cintas's trade secrets, causing further immediate and irreparable harm for which there is no adequate remedy at law.

73.    Under 18 U.S.C. § 1836(b)(3), Cintas is entitled to both preliminary and permanent injunctive relief.  Cintas is also entitled to compensatory damages, damages for unjust enrichment and/or reasonable royalties, and exemplary damages and attorneys' fees due to ImageFIRST's willful and malicious conduct.

74.     Cintas therefore requests judgment in its favor and against ImageFIRST on this Count.

## COUNT II

## ACTUAL AND/OR THREATENED MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE UNIFORM PENNSYLVANIA TRADE SECRETS ACT 12 PA. C.S.A. § 5301, *ET SEQ.*

75.     The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

76.     Cintas owns, possesses, and maintains protectable "trade secrets" within the meaning of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. C.S. § 5302.  These trade secrets include, but are not limited to, non-public information relating to Cintas's pricing methodologies, competitive bid strategies, customer-specific requirements, national and global account structures, sales processes, operational models, training programs, internal presentations, market analyses, product composition data, supply-chain practices, financial performance metrics, employee performance criteria, and other confidential business information developed at substantial expense over many years.

77.     These trade secrets derive independent economic value from not being generally known to, or readily ascertainable by, competitors and the general public.  Access to such information would provide a competitor with a substantial and unfair advantage in pricing, bidding, sales strategy, customer acquisition, operational execution, employee recruitment, and national-market expansion at the expense of Cintas.

78.     Cintas has taken reasonable measures to maintain the secrecy of its trade secrets, including requiring employees to execute confidentiality and non-disclosure agreements; limiting

access to sensitive information through password protection, role-based access controls, and internal data-security systems; and providing training regarding confidentiality obligations and the need-to-know handling of proprietary information.  The aforementioned confidential and proprietary information is not readily ascertainable by proper means.

79.    ImageFIRST knowingly acquired, used, or threatened to use Cintas's trade secrets through the hiring and inducement of multiple long-tenured Cintas employees who possessed such information and were subject to contractual, fiduciary, and/or statutory duties to maintain its confidentiality.

80.    Prior to their departures, several of these employees, including without limitation Hilderbrand, Brosnan, Lunetta, Sandoval, and Garrity, accessed, downloaded, forwarded, or retained confidential Cintas materials without authorization and in violation of their contractual obligations and/or duties of loyalty.

81.    Upon information and belief, ImageFIRST knew or had reason to know that these employees were bound by confidentiality agreements and/or that their unauthorized acquisition, disclosure, or use of Cintas's proprietary information constituted misappropriation under PUTSA.

82.    By offering extraordinary, supracompetitive financial inducements, coaching employees on concealing their future employment with ImageFIRST, encouraging circumvention of contractual and legal obligations, and placing former Cintas employees into positions where their Cintas-derived knowledge would inevitably influence competitive decision-making, ImageFIRST has acquired, used, or is threatening to use Cintas's trade secrets without Cintas's consent.

83.    ImageFIRST's conduct constitutes actual and threatened misappropriation within the meaning of 12 Pa. C.S. § 5302, including:

(a) acquisition of trade secrets by persons who knew or had reason to know that the trade secrets were acquired by improper means; and

(b) disclosure or use, or threatened disclosure or use, of trade secrets without consent by a party who knew or had reason to know that the trade secrets were acquired through improper means or under circumstances giving rise to a duty to maintain their secrecy.

84.    ImageFIRST's misappropriation was willful and malicious. Its actions reflect a coordinated and deliberate competitive strategy, directed by senior executives, to accelerate ImageFIRST's growth by exploiting Cintas's proprietary and confidential information.

85.    As a direct and proximate result of ImageFIRST's misappropriation, Cintas has suffered and continues to suffer irreparable harm, including loss of competitive position, erosion of customer relationships, impairment of goodwill, disclosure of strategic information, and an ongoing risk of further misuse of its trade secrets. This harm extends beyond Pennsylvania, as ImageFIRST has used and intends to continue using Cintas's trade secrets to accelerate its market position in the healthcare industry.

86.    Unless enjoined, ImageFIRST will continue to misappropriate, use, and disclose Cintas's trade secrets, causing immediate and irreparable harm for which there is no adequate remedy at law.

87.    Pursuant to 12 Pa. C.S. §§ 5303 and 5304, Cintas is entitled to preliminary and permanent injunctive relief, compensatory damages, damages for unjust enrichment not otherwise included in compensatory damages, or, in the alternative, a reasonable royalty. Cintas

23

is further entitled to exemplary damages and attorneys' fees due to ImageFIRST's willful and malicious misappropriation.

88.     Cintas therefore requests judgment in its favor and against ImageFIRST on this Count.

## COUNT III

## TORTIOUS INTERFERENCE WITH CONTRACT

89.     The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

90.     At all relevant times, Cintas was party to valid and enforceable employment agreements with departing employees, which contained restrictive covenants prohibiting, among other things, competition, solicitation of Cintas customers, solicitation of Cintas employees, disparagement, and misuse or disclosure of confidential information.  While some restrictive covenants may not be enforceable in all respects under all the relevant state laws, the employment agreements are valid contracts and remain enforceable in all other respects.

91.     These agreements constituted binding contracts supported by adequate consideration.

92.     Most of the terms in the various restrictive covenant agreements, including but not limited to the non-disparagement covenant, the non-solicitation of employees covenant, and the non-solicitation of customers covenant, are legal and enforceable covenants between departing employees and Cintas under the state law applicable to most of the departing employees.

93.     For those departing employees subject to a non-disparagement covenant, the applicable agreement prohibits such employees, during and after their employment with Cintas,

24

from making or publishing false, misleading, or disparaging statements concerning Cintas, its business, customers, employees, officers, or services, and from otherwise taking actions intended to harm Cintas's reputation, goodwill, or business relationships.

94.     For those departing employees subject to a non-competition covenant, the applicable agreement prohibits such employees, during employment and for a limited period following the termination of employment for any reason, from directly or indirectly owning, managing, operating, controlling, being employed by, consulting with, or otherwise participating in any business that competes with Cintas's Business Units in which the employee worked or regarding which the employee received Confidential Material and Information during the final months of employment.

95.     For those departing employees subject to a non-solicitation of employees covenant, the applicable agreement prohibits such employees, during employment and for a limited period following termination, from directly or indirectly soliciting, inducing, influencing, or attempting to solicit, induce, or influence any Cintas employee with whom the departing employee worked, or about whom the departing employee obtained confidential information, to terminate or alter that employee's relationship with Cintas.

96.     For those departing employees subject to a non-solicitation of customers covenant, the applicable agreement prohibits such employees, during employment and for a limited period following termination, from directly or indirectly calling upon, soliciting, or communicating with any Cintas customer or prospective customer for the purpose of providing or attempting to provide products or services competitive with those offered by Cintas, where such customer or prospective customer was serviced by, contacted by, or known to the employee during the final period of employment.

97.     Upon information and belief, ImageFIRST had knowledge of the departing employees' contractual obligations to Cintas since at least Hilderbrand's hiring in August 2024, and potentially earlier, given ImageFIRST's prior hiring of former Cintas employees subject to materially identical agreements.

98.     Despite this knowledge, ImageFIRST intentionally and improperly procured breaches of the departing employees' agreements with Cintas by, among other things:

    a. Offering extraordinary and supracompetitive compensation and benefits designed to induce departing employees to disregard and violate their restrictive covenants;

    b. Encouraging and facilitating departing employees' concealment of their planned employment with ImageFIRST while still employed by Cintas;

    c. Coaching departing employees to evade or disregard their non-competition, non-solicitation, non-disparagement, and confidentiality obligations;

    d. Hiring departing employees into roles substantially similar to their former positions at Cintas, where the use of Cintas's confidential information and customer relationships was inevitable;

    e. Directing or encouraging departing employees to solicit Cintas customers and employees in violation of their contractual covenants; and

    f. Accepting, using, and benefiting from Cintas confidential information and trade secrets obtained by departing employees in breach of their agreements.

99.     ImageFIRST's conduct was intentional, knowing, and improper, and was undertaken for the purpose of disrupting Cintas's contractual relationships and unfairly competing with Cintas.

26

100.    As a direct and proximate result of ImageFIRST's unlawful procurement of breach of contract, various departing employees breached their contractual obligations to Cintas, including their obligations not to compete, not to solicit Cintas customers or employees, not to disparage Cintas, and not to use or disclose Cintas confidential information.

101.    Cintas has suffered and continues to suffer substantial damages as a result of ImageFIRST's conduct, including loss of customers, loss of employees, loss of goodwill, loss of confidential and proprietary information, and diminished competitive position.

102.    ImageFIRST's interference was not justified, privileged, or the result of lawful competition, but instead constituted wrongful and improper conduct under state law.

103.    ImageFIRST acted willfully and maliciously, entitling Cintas to an award of punitive damages.

104.    Cintas has suffered irreparable harm for which there is no adequate remedy at law and is entitled to injunctive relief prohibiting ImageFIRST from continuing to induce or benefit from breaches of Cintas's employment agreements.

105.    Cintas is entitled to compensatory damages, consequential damages, punitive damages, attorneys' fees where permitted by law, costs, and such other relief as the Court deems just and proper.

## COUNT IV

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

106.    The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

107.    The departing employees owed Cintas a duty of loyalty under state statute and/or common law, including duties to act in Cintas's best interests, to refrain from competing with

27

Cintas during their employment, to avoid conflicts of interest, and to refrain from using or disclosing Cintas's confidential and proprietary information for personal or third-party benefit.

108.    While still employed by Cintas, various departing employees breached their duties of loyalty by, among other things, secretly planning competitive employment with ImageFIRST, soliciting Cintas customers and employees, accessing and misappropriating Cintas confidential information, and otherwise acting in furtherance of ImageFIRST's competitive interests rather than Cintas's interests.

109.    ImageFIRST had actual knowledge, or at a minimum consciously disregarded, that the departing employees owed Cintas duties of loyalty and were prohibited from competing with Cintas, soliciting Cintas customers or employees, or misusing Cintas confidential information while still employed.

110.    Notwithstanding that knowledge, ImageFIRST knowingly and substantially assisted, encouraged, and participated in the departing employees' breaches of their duties of loyalty by, among other things:

  a. Recruiting and engaging in ongoing communications with the departing employees while they remained employed by Cintas concerning competitive strategy, customer targeting, and operational planning;

  b. Encouraging departing employees to conceal their future employment with ImageFIRST from Cintas;

  c. Offering extraordinary and supracompetitive compensation and incentives designed to induce disloyal conduct while the departing employees were still employed by Cintas;

d.  Encouraging or accepting the transfer, retention, or use of Cintas confidential and proprietary information prior to and following the employees' departures;

e.  Coordinating hiring timelines and job placements to maximize the departing employees' ability to exploit Cintas customer relationships and confidential information; and

f.  Failing to implement safeguards to prevent or stop disloyal conduct once ImageFIRST knew or should have known it was occurring.

111.    ImageFIRST's assistance was a substantial factor in enabling, facilitating, and perpetuating departing employees' breaches of their duties of loyalty to Cintas.

112.    ImageFIRST acted intentionally, knowingly, and improperly, with the purpose of unfairly competing with Cintas and accelerating its growth by exploiting the disloyal conduct of Cintas's employees.

113.    As a direct and proximate result of ImageFIRST's aiding and abetting of the breaches of the duty of loyalty, Cintas has suffered substantial damages, including loss of customers, loss of employees, loss of goodwill, disclosure of confidential information, and impairment of its competitive position.

114.    ImageFIRST's conduct was willful, malicious, and in conscious disregard of Cintas's rights, entitling Cintas to an award of punitive damages.

115.    Cintas has suffered irreparable harm for which there is no adequate remedy at law and is entitled to injunctive relief prohibiting ImageFIRST from continuing to assist, encourage, or benefit from breaches of the duty of loyalty owed to Cintas.

116.    Cintas is entitled to compensatory damages, consequential damages, punitive damages, costs, and such other relief as the Court deems just and proper.

## COUNT V

## TORT OF ANOTHER

117.    The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

118.    Where a defendant's wrongful conduct causes a plaintiff to become involved in litigation with a third party, the plaintiff may recover, as damages, the reasonable attorneys' fees and costs incurred in that third-party litigation.

119.    As alleged herein, departing employees owed Cintas contractual, fiduciary, and common-law duties, including duties of loyalty, confidentiality, and compliance with enforceable restrictive covenants.

120.    As further alleged, ImageFIRST knowingly and wrongfully engaged in a course of conduct designed to induce, encourage, facilitate, and exploit departing employees' breaches of their contractual obligations and duties of loyalty to Cintas, including by recruiting them into competitive roles, encouraging concealment of competitive activity, and accepting the benefits of disloyal conduct and contractual violations.

121.    ImageFIRST knew or should have known that its conduct would cause departing employees to breach their agreements and duties to Cintas and would require Cintas to take legal action to protect its contractual rights, confidential information, customer relationships, and competitive position.

122.    As a direct and proximate result of ImageFIRST's wrongful conduct, Cintas was forced to initiate and pursue arbitration proceedings against departing employees to address and remediate their breaches of contract, breaches of the duty of loyalty, and misuse of Cintas confidential and proprietary information.

30

123.    The legal fees, costs, and expenses incurred by Cintas in pursuing claims against the departing employees were a natural, necessary, and proximate consequence of ImageFIRST's tortious conduct.

124.    But for ImageFIRST's knowing encouragement, facilitation, and exploitation of departing employees' misconduct, Cintas would not have been required to incur attorneys' fees and costs in enforcing its agreements and protecting its rights against those employees.

125.    ImageFIRST's conduct was intentional, knowing, and improper, and was undertaken with conscious disregard of the likelihood that it would force Cintas into litigation and arbitration with its own employees.

126.    Accordingly, under the tort of another doctrine, ImageFIRST is liable to Cintas for the reasonable attorneys' fees, costs, and expenses Cintas incurred in litigation against departing employees, in addition to any other damages recoverable under law.

127.    Cintas has suffered and continues to suffer damages in an amount to be proven at trial as a result of ImageFIRST's conduct.

128.    Cintas therefore seeks judgment against ImageFIRST awarding all damages available under the tort of another doctrine, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT VI

## UNJUST ENRICHMENT

129.    The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

130.    Through the conduct described herein, ImageFIRST received and retained substantial benefits at Cintas's expense, including, without limitation, access to Cintas's

confidential and proprietary information, customer relationships, pricing and competitive intelligence, trained and experienced employees, and the goodwill Cintas developed through years of investment.

131.    ImageFIRST obtained these benefits by knowingly recruiting and hiring Cintas employees while they were still subject to contractual, fiduciary, and common-law duties to Cintas, and by encouraging, facilitating, and exploiting those employees' breaches of their agreements and duties of loyalty.

132.    ImageFIRST knew or should have known that the benefits it received were improperly obtained and belonged to Cintas, and that retention of those benefits without compensation would be inequitable.

133.    ImageFIRST knowingly accepted, used, and profited from these benefits, including by accelerating its market expansion, strengthening its competitive position, reducing its costs of customer acquisition and employee training, and generating revenues it otherwise would not have achieved.

134.    Cintas conferred the benefits at issue indirectly and involuntarily, as a result of ImageFIRST's wrongful conduct, and not pursuant to any contract or agreement between Cintas and ImageFIRST.

135.    There is no adequate remedy at law for ImageFIRST's unjust retention of these benefits, or, alternatively, Cintas pleads this claim in the alternative to its contractual and statutory claims to the extent any such claims are found not to apply.

136.    It would be unjust and inequitable to permit ImageFIRST to retain the benefits obtained through the breaches of Cintas's contracts and the disloyal conduct of Cintas's employees without requiring ImageFIRST to disgorge the value of those benefits.

137.    As a direct and proximate result of ImageFIRST's unjust enrichment, Cintas has suffered damages, and ImageFIRST has been unjustly enriched, in an amount to be determined at trial.

138.    Cintas seeks restitution, disgorgement, and all other equitable relief necessary to prevent ImageFIRST's unjust enrichment, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT VII

## UNFAIR COMPETITION

139.    The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

140.    Common law prohibits unfair competition, including the misappropriation of another's business operations and strategies, exploitation of confidential information and customer relationships, interference with contractual and fiduciary relationships, and competition through improper or unlawful means.

141.    As alleged herein, ImageFIRST engaged in a systematic course of unfair competition designed to appropriate Cintas's business, customers, workforce, and competitive advantages rather than compete on the merits.

142.    ImageFIRST's unfair competitive conduct included, without limitation:

a.    Recruiting and hiring Cintas employees while knowing they were bound by enforceable restrictive covenants and duties of loyalty;

b.    Encouraging and facilitating breaches of those contracts and duties, including competition during employment, customer solicitation, employee solicitation, and misuse of confidential information;

33

    c.   Exploiting Cintas's confidential and proprietary information, including pricing, customer requirements, competitive strategies, and operational know-how, to gain an unfair market advantage;

    d.   Targeting and soliciting Cintas customers using Cintas-derived knowledge and relationships developed at Cintas's expense;

    e.   Undermining Cintas's workforce stability by inducing coordinated employee departures; and

    f.   Accelerating ImageFIRST's expansion and competitive position through improper means rather than independent innovation or lawful competition.

143.    ImageFIRST knew or should have known that its conduct was improper, unlawful, and inconsistent with honest commercial practices, and that it exceeded the bounds of fair competition under applicable state law.

144.    ImageFIRST's actions constituted misappropriation of Cintas's labor, skill, expenditures, confidential information, and goodwill, and were undertaken with the intent to divert business from Cintas and damage Cintas's business.

145.    As a direct and proximate result of ImageFIRST's unfair competition, Cintas has suffered substantial damages, including loss of customers, loss of employees, loss of goodwill, disclosure of confidential information, erosion of business, and lost profits.

146.    ImageFIRST's unfair competitive conduct was willful, malicious, and in conscious disregard of Cintas's rights, entitling Cintas to an award of punitive damages.

147.    Cintas has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law and is entitled to injunctive relief prohibiting ImageFIRST from continuing its unfair competitive practices.

148.    Cintas seeks all relief available under applicable law, including compensatory damages, punitive damages, injunctive and equitable relief, costs, interest, and such other relief as the Court deems just and proper.

## COUNT VIII

## CIVIL CONSPIRACY

149.    The allegations contained in the forgoing paragraphs are incorporated by reference and re-alleged as if specifically set forth herein.

150.    At all relevant times, ImageFIRST and the departing employees entered into a combination, agreement, or understanding to engage in unlawful acts and/or lawful acts by unlawful means, including breaches of contract, breaches of the duty of loyalty, misappropriation of confidential and proprietary information, and unfair competition.

151.    The object of the conspiracy was to unfairly compete with Cintas and accelerate ImageFIRST's growth by exploiting Cintas's contractual rights, confidential information, customer relationships, and workforce through coordinated and disloyal conduct.

152.    In furtherance of the conspiracy, ImageFIRST and the departing employees committed overt acts, including but not limited to:

a.    Communicating and coordinating regarding competitive employment and business strategy while the departing employees were still employed by Cintas;

b.    Encouraging and facilitating concealment of the departing employees' future employment with ImageFIRST;

c.    Offering extraordinary and supracompetitive compensation and incentives designed to induce violations of contractual and fiduciary obligations;

35

     d.   Accessing, downloading, retaining, transferring, and using Cintas confidential and proprietary information without authorization;

     e.   Soliciting Cintas customers and employees in violation of contractual restrictions and duties of loyalty; and

     f.   Hiring departing employees into competitive roles where the misuse of Cintas confidential information and customer relationships was expected and intended.

153.    ImageFIRST knowingly participated in and directed the conspiracy, with actual knowledge of the departing employees' contractual obligations and/or duties of loyalty, and with the intent to cause injury to Cintas.

154.    The conspirators acted with malice, or with an intent to injure Cintas without justification, and not merely to advance legitimate competition.

155.    As a direct and proximate result of the conspiracy and the overt acts committed in furtherance thereof, Cintas suffered substantial damages, including loss of customers, loss of employees, loss of goodwill, disclosure of confidential information, erosion of competitive position, and the incurrence of significant legal fees and costs.

156.    Each conspirator is jointly and severally liable for all acts committed by the other conspirators in furtherance of the conspiracy.

157.    ImageFIRST's conduct was willful, malicious, and in conscious disregard of Cintas's rights, entitling Cintas to an award of punitive damages.

158.    Cintas has suffered irreparable harm for which there is no adequate remedy at law and is entitled to injunctive relief prohibiting ImageFIRST from continuing to participate in or benefit from the unlawful conspiracy.

159.    Cintas seeks all available relief, including compensatory damages, punitive

damages, injunctive relief, costs, interest, and such other relief as the Court deems just and

proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cintas Corporation respectfully requests that this Court enter

judgment in its favor and against Defendant ImageFIRST, and award the following relief:

### A. **Declaratory Relief**

A declaration, pursuant to 28 U.S.C. § 2201, that the employment and confidentiality

agreements between Cintas and various departing employees are valid, enforceable, and binding

under applicable law; and that ImageFIRST and Cintas are "engaged in competition" as that term

is defined in the relevant agreements.

### B. **Injunctive Relief**

Preliminary and permanent injunctive relief, pursuant to Federal Rule of Civil Procedure

65, enjoining ImageFIRST, its officers, agents, servants, employees, and all persons acting in

active concert or participation with it, from:

1.  Using, disclosing, or further misappropriating Cintas's trade secrets or confidential
    and proprietary information;

2.  Soliciting or servicing Cintas customers through the use of Cintas confidential
    information or customer relationships obtained through breaches of contract or
    breaches of the duty of loyalty;

3.  Soliciting or inducing Cintas employees to terminate or alter their employment with
    Cintas in violation of enforceable contractual or fiduciary obligations;

4. Assisting, encouraging, or benefiting from breaches of contract, breaches of the duty of loyalty, or other unlawful conduct by former or current Cintas employees;

5. Engaging in unfair competition, civil conspiracy, or other unlawful acts that interfere with Cintas's contractual or business relationships;

**C.  <u>Compensatory Damages</u>**

An award of compensatory damages in an amount to be determined at trial, including damages for lost profits, loss of customers, loss of goodwill, and harm to Cintas's competitive position;

**D.  <u>Trade Secret Remedies</u>**

An award of all relief available under applicable trade secret law, including:

1. Damages for actual loss and unjust enrichment not otherwise included in compensatory damages;

2. In the alternative, a reasonable royalty for any unauthorized use or disclosure of Cintas's trade secrets;

3. Exemplary damages to the extent permitted by law for willful and malicious misappropriation;

**E.  <u>Tort of Another Damages</u>**

An award of reasonable attorneys' fees, costs, and expenses incurred by Cintas in litigation against third parties, including the departing employees, that were a direct and foreseeable result of ImageFIRST's tortious conduct;

**F.  <u>Punitive Damages</u>**

An award of punitive damages under applicable common law for ImageFIRST's willful, malicious, and egregious misconduct;

**G. <u>Attorneys' Fees and Costs</u>**

An award of attorneys' fees and costs as permitted by statute, contract, or applicable common law, including under the Pennsylvania Uniform Trade Secrets Act and the tort-of-another doctrine;

**H. <u>Interest</u>**

An award of pre-judgment and post-judgment interest pursuant to applicable federal and state law;

**I. <u>Equitable Relief</u>**

Such other equitable relief as the Court deems appropriate, including accounting, restitution, disgorgement, and the imposition of a constructive trust, to prevent ImageFIRST's unjust enrichment;

**J. <u>Further Relief</u>**

Such other and further legal or equitable relief as the Court deems just and proper.

Dated: January 16, 2026

<u>/s/ *Stephen R. Chuk*</u>
Stephen R. Chuk
PROSKAUER ROSE LLP
10001 Pennsylvania Ave NW
Suite 600 South
Washington, DC 20004
(202) 416-6800
schuk@proskauer.com

<u>/s/ *Gregory Knopp*</u>
Gregory Knopp (*pro hac vice forthcoming*)
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
(310) 557-2900
gknopp@proskauer.com

/s/ *David Fioccola*
David Fioccola (*pro hac vice forthcoming*)
Craig Whitney (*pro hac vice forthcoming*)
Emily Kline (*pro hac vice forthcoming*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dfioccola@proskauer.com
cwhitney@proskauer.com
ekline@proskauer.com

*Attorneys for Cintas Corporation*