# EXHIBIT D

Loc #: _____  Partner ID #: _____  H  S

Dept. #: _____  Title: _____

Last Name: _____  First Name: _____

Date of Hire: _____

Corporate Policy #C-105 (United States)

Exhibit D - CA

Agreement #4

Reviewed September 27, 2018

Revised September 27, 2018

## CINTAS CORPORATION

## CALIFORNIA EMPLOYMENT AGREEMENT
## FOR SALES, SERVICE AND MARKETING PERSONNEL

THIS EMPLOYMENT AGREEMENT ("Agreement") is made and entered into this 1st day of _June_, 2023, by and between _Ryan Hartzheim_ ("Employee") and Cintas Corporation, a Washington corporation headquartered in Ohio, including its agents, business units, wholly-owned subsidiaries and affiliated companies (collectively "Employer" or "Cintas").

1.      PARTIES.

Employee either is employed by or desires to be employed with Employer in one of the Cintas Business Units described in the next paragraph. In such position, Employee has or will have access to Employer's Confidential Material and Information, as that term is defined below.

Through its business units ("Business Units"), which currently include but are not limited to the Rental Division, the Sales Division, the Global Accounts Division, the Direct Sale & Strategic Markets Division, the First Aid & Safety Products Division and the Fire Protection Division (collectively "Industries," which term means the Business Units continuously operated, and those acquired or developed, by Employer during Employee's employment with Employer under this Agreement), Employer strives to become and remain a leader in the highly-competitive Industries. By expending considerable time, effort and resources in developing, acquiring, refining and protecting them, Employer has implemented and is utilizing constantly confidential information, strategies and programs, which include expansion and acquisition plans, market research, sales systems, marketing programs, product development strategies, budgets, pricing strategies, identity and preferences of customers and prospects and customer contact persons, methods of operating, service systems, computer passwords, other trade secrets and confidential information regarding customers and employees of Employer or of its customers and other information not known to the public (collectively "Confidential Material and Information"), giving Employer an advantage over competitors not aware of such Confidential Material and Information.

2.    CONSIDERATION.

As consideration for this Agreement, Employer [CHECK THE APPROPRIATE LINE(S) OF ALL APPLICABLE REASONS]

(___) hires Employee;

(___) is promoting Employee or is promising Employee better and higher priority job assignments;

(_X_) is increasing Employee's rate of compensation;

(___) is granting Employee additional or improved fringe benefit of _____ (please specify improved benefit).

In addition, Employer agrees to arbitrate certain claims against Employee under this Agreement as set forth in Section 7.  Employee agrees that there is sufficient consideration for Employee's obligations, acknowledgments, and covenants, contained herein.

3.    EMPLOYMENT RELATIONSHIP.

Employee agrees to abide by Employer's published policies, copies of which have been made available to Employee.  Employee further agrees to devote all of Employee's business time, attention and energies to the business interests of the Employer, which precludes Employee from service as an employee, contractor, consultant, advisor, officer, or director for any other profit business entity that would interfere with Employee's ability to competently perform Employee's job duties for the Employer.  In addition, Employee agrees that he or she will not engage in any outside job that is in direct conflict with the essential business of the Employer, and that could result in the material and substantial disruption of the Employer's business.

Employee also agrees that all business ideas, concepts, inventions, improvements and developments made or conceived by Employee, either solely or in collaboration with others, during Employee's employment with Employer and relating in any way to Cintas, will become and remain the exclusive property of Employer; and Employee promptly will disclose in writing to Employer all such ideas, concepts, inventions, improvements and developments and will cooperate fully with Employer in confirming, safeguarding and obtaining legal protection of Employer's ownership rights and interests.

Employer and Employee agree that this Agreement supersedes and cancels all prior agreements between them concerning the same subject matter, except for any prior arrangements concerning Employee's compensation and Employee's participation in Employer's benefit programs.  Employer agrees to pay to Employee such compensation and to provide Employee with such benefits as agreed upon by the parties.

Employee's employment by Employer may be terminated for any reason at any time by either Employee or Employer, but if Employer elects to terminate Employee's employment Employer will give two (2) weeks' written notice to Employee or pay Employee two (2) weeks of Employee's base salary instead of notice.  Employer, however, may end the employment

relationship without either notice or salary continuation instead of notice if Employer terminates Employee for Major Infractions as defined under Cintas Policy. These include, but are not limited to, gross misconduct, theft of or intentional damage to Employer's property, abuse of alcohol on working time or Employer premises, use of illegal drugs, commission of a criminal act (other than a misdemeanor traffic offense), insubordination, dishonesty, or willful violation of Employer's policy prohibiting employees from disposing of shares of Employer stock for personal gain based on knowledge of Employer's activities or results when such information is not available to the general public.

4.      EMPLOYEE'S ACKNOWLEDGMENTS AND COVENANTS.

a.      Non-Disclosure Covenant. In performing duties for Employer, Employee regularly will be exposed to and work with Employer's Confidential Material and Information concerning the Business Unit(s) to which Employee devotes Employee's business time, attention and energies for Employer. Employee acknowledges that such Confidential Material and Information is critical to Employer's success and that Employer has invested substantial time and money in developing Employer's Confidential Material and Information. Thus, while Employee is employed by Employer, and after such employment ends for any reason, Employee will not reproduce, publish, disclose, use, reveal, show, or otherwise communicate to any person or entity any Confidential Material and Information of Employer unless specifically assigned or directed by Employer to do so. This Non-Disclosure Covenant applies for as long as the Confidential Material and Information is not generally known to the public.

b.      Non-Solicitation of Customers. Employee recognizes that unauthorized use or disclosure of Employer's trade secrets, including its customer lists, customer contact information, and customer purchasing history, would harm Employer. Thus, while Employee is employed by Employer, and for twelve (12) months after such employment ends for any reason, Employee, acting either directly or indirectly through any other person or business entity, will not use or disclose Employer's trade secrets to call on or solicit any of Employer's customers for the purpose of diverting any Industries business from Employer. As used in this Agreement, "customer" means a business entity (including representatives of such business entity) to which Employee provided Industries goods or services during Employee's last twelve (12) months of employment with Employer.

c.      Non-Solicitation of Employees. While Employee is employed by Employer, and for twelve (12) months after such employment ends for any reason, Employee, acting either directly or indirectly through any other person or business entity, will not induce or influence or attempt to induce or influence any employee of Employer to terminate employment with Employer. As used in this paragraph, "employee" means an individual who worked at any location where Employee worked during Employee's last twelve (12) months of employment with Employer.

d.      Return of Employer Property. Employee further agrees that whenever Employee's employment with Employer ends for any reason, Employee shall deliver to

Employer immediately without request all property belonging to Employer, including, but not limited to, computer equipment, software, credit cards, keys, and access cards.

      e.      Return of Confidential Material and Information.  Employee agrees that whenever Employee's employment with Employer ends for any reason, all documents and other items containing or referring to Employer's Confidential Material and Information in Employee's possession or under Employee's control will be delivered by Employee to Employer immediately, with no request being required.

      f.      Irreparable Harm.  Employee acknowledges and agrees that a breach of any covenant in this Section 4 will cause Employer irreparable injury and damage for which Employer may have no adequate remedy.

      g.      In the event of any dispute over Employee's compliance with the obligations, acknowledgments and covenants in this Section 4, either party may request arbitration of the dispute consistent with Section 7 of this Agreement.  At the request of either party, The American Arbitration Association's Optional Rules for Emergency Measures of Protection will be used.  Those rules may be viewed at the American Arbitration Association Website: www.adr.org.

      h.      Additional Acknowledgments.  Employee, having carefully considered the nature and extent of the restrictions upon Employee and the rights and remedies conferred upon Employer by this Section 4, hereby acknowledges and agrees that the terms of this Section 4 are a material inducement for Employer to enter into this Agreement, are reasonable in time and scope to prevent only unfair competition and to protect Employer's Confidential Material and Information, do not prevent Employee's fair use of Employee's general skill and experience, and are appropriate and reasonably necessary to protect Employer's legitimate business interests.

      i.      18 U.S.C. § 1833(b) states:

"An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal." Accordingly, the Parties to this Agreement have the right to disclose in confidence trade secrets to Federal, State, and local government officials, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of law. The Parties also have the right to disclose trade secrets in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

5.    PAY DEDUCTION.

Employee hereby authorizes Employer to withhold from any check(s) or other amounts payable to Employee after Employee's active employment with Employer ends the amount(s) of any relocation expenses owed by Employee and the balance of every outstanding loan, advance or promissory note made by Employer to Employee.

6.    APPLICABLE LAW.

**THIS AGREEMENT WILL BE INTERPRETED, GOVERNED AND ENFORCED ACCORDING TO THE FEDERAL ARBITRATION ACT.**

7.    EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES.

Should any dispute or difference arise between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement, the parties may confer and attempt to resolve promptly such dispute or difference. The rights and claims of Employer covered by this Section 7, including the arbitration provisions below, include Employer's claims for damages, as well as reasonable costs and attorneys' fees, caused by Employee's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of Employee covered by this Section 7, including the arbitration provisions below, include Employee's rights or claims for damages as well as reasonable costs and attorneys' fees, caused by Employer's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of Employee covered by this Section 7, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under the Age Discrimination in Employment Act, as amended, Title VII of the Civil Rights Act of 1964, as amended (including amendments contained in the Civil Rights Act of 1991), the Americans With Disabilities Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Employee Retirement Income Security Act, state anti-discrimination statutes, other state or local laws regarding employment, common law theories such as breach of express or implied contract, wrongful discharge defamation, and negligent or intentional infliction of emotional distress.

Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration. The place of arbitration shall be in the county and state where Employee currently works for Employer or most recently worked for Employer. Any such request for arbitration must be submitted within one year of the date when the dispute or difference first arose or within one year of when the Employee's employment ends, whichever occurs first, unless a party claims a violation of a specific statute having its own specific statute of limitations, in which event that statutory time limit will apply. Employee's initial share of the arbitration filing fee will not exceed $100 or the amount it would cost Employee to file the

equivalent action in court, whichever is less, and will be payable to the arbitrator or AAA. Arbitration under this Agreement will be conducted in accordance with the AAA's National Rules for Resolution of Employment Disputes, except if such AAA rules are contrary to applicable state or federal law, applicable law shall govern.

In any arbitration proceeding, the Arbitrator will apply the terms of this Agreement as written, the Federal Arbitration Act, and other relevant federal and state laws, including time limits on claims. Employer will bear all fees, expenses, and charges of the AAA and the Arbitrator, with the exception of Employee's share of the arbitration filing fee. The Arbitrator also will have the authority to award either party appropriate relief, including damages, costs and attorney's fees, as available under relevant laws. In no event, however, will the Arbitrator direct Employee to pay more than Employee's share of the arbitration filing fee toward the fees of the Arbitrator and the AAA. Notwithstanding the above, upon Employee's showing of indigence, as determined by the Arbitrator under applicable law, Employee's share of the arbitration filing fee will be paid by Employer.

Except for claims not lawfully subject to arbitration, the impartial arbitration proceeding, as provided above in this Section 7, will be the exclusive, final and binding method of resolving any and all disputes between Employer and Employee. The Arbitrator, however, will have authority to entertain and decide a motion for reconsideration of the arbitration award.

Except as otherwise required under applicable law, Employee and Employer expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Section 7; Employee and Employer agree that each will not assert class action or representative action claims against the other in arbitration or otherwise; and Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person.

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable.

Arbitration under this Agreement will be conducted in accordance with the AAA's Employment Arbitration Rules and Mediation Procedures, except if such AAA rules are contrary to this Section 7 and/or to applicable state or federal law, then this Section 7 and/or applicable law shall govern. The Rules may be viewed at the American Arbitration Association Website: www.adr.org.

8.    MODIFICATION AND SEPARABILITY.

If any portion of this Agreement is held to be invalid or unenforceable in any respect, Employee and Employer agree that such invalid or unenforceable part may be severed or modified to permit the Agreement to be enforced to the maximum extent permitted under law,

with the remaining portions unaffected by the invalidity or unenforceability of any part of this Agreement.

### 9.    BINDING EFFECT/ASSIGNMENT

This Agreement shall be binding upon the parties and their respective heirs, executors, administrators, successors, and assigns; provided, however, that Employee shall not assign any part of Employee's rights or duties under this Agreement without the prior written consent of Employer, which Employer may grant or withhold in its sole discretion, and any such assignment by Employee without Employer's prior written consent shall be void and of no force or effect.  In the event of a merger, sale, transfer, consolidation, or reorganization involving Employer, this Agreement shall continue in full force and effect and shall be binding upon, and inure to the benefit of, Employer's successors and assigns.

### 10.    PUBLICITY

Employee authorizes Employer to use and own any photographs, motion pictures, and/or video taken of Employee, including Employee's name, likeness and voice, as well as any testimonial statements made by Employee ("Publicity Items"), and any reproduction of them in any form, for the purpose of publicizing, promoting and advertising Employer's activities in any media now known or later developed, in perpetuity and throughout the world, for no additional compensation. Employee releases and holds harmless Employer from any and all claims which may arise out of or in connection with Employer's use of the Publicity Items.

11.    COMPLETE AGREEMENT.

ASIDE FROM THE AMOUNTS OF EMPLOYEE'S COMPENSATION AND EMPLOYEE'S ENTITLEMENT TO BENEFITS, THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN EMPLOYER AND EMPLOYEE REGARDING SUBJECTS ADDRESSED HEREIN, AND THE PARTIES CAN AMEND OR MODIFY THIS AGREEMENT ONLY BY A SUBSEQUENTLY-EXECUTED WRITTEN AGREEMENT SIGNED BY BOTH PARTIES.

EMPLOYEE WITNESSES:                         EMPLOYEE:

NAME PRINTED: MARCO GARCIA          NAME PRINTED: Ryan Hartzheim
                                                                   TITLE: Global Account Manager
NAME PRINTED: Melinda Gilliland         LOC.#: K95

EMPLOYER WITNESSES:                         CINTAS CORPORATION – EMPLOYER

NAME PRINTED: Melinda Gilliland          NAME PRINTED: Annette Aguirre
                                                                   TITLE: National Director of Gaming
NAME PRINTED: RYAN HARTZHEIM        LOC.#: K95

6839252.2