**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Cintas Corporation<br><br>Plaintiff,<br><br>-against-<br><br>ImageFIRST Healthcare Laundry Specialists, LLC,<br><br>Defendant. | Civil Action No. 2:26-cv-00302-JFM |

**DEFENDANT IMAGEFIRST'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Defendant ImageFIRST Healthcare Laundry Specialists, LLC ("ImageFIRST") respectfully submits this Memorandum of Law in Opposition to Plaintiff Cintas Corporation's ("Cintas") Motion to Dismiss ImageFIRST's Counterclaims (DI 84).

# TABLE OF CONTENTS

**Page No.**


I. PRELIMINARY STATEMENT ... 1

II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND ... 2

A. The Parties ... 2

B. Cintas' Restrictive Covenants ... 2

C. Cintas' Campaign of Enforcement ... 3

D. Procedural History ... 5

III. LEGAL STANDARD ... 5

IV. ANALYSIS ... 6

A. The *Noerr-Pennington* Doctrine Does Not Bar ImageFIRST's Counterclaims. ... 6

1. ImageFIRST's Counterclaims Are Based on a Series of Acts by Cintas, Much of Which Is Commercial Conduct and Does Not Involve Government Petitioning. ... 7

2. A Holistic Review of Cintas' Conduct Demonstrates that Any Petitioning Conduct Was Nothing More than an Attempt to Interfere With a Perceived Market Rival. ... 9

3. *Noerr-Pennington* Is an Affirmative Defense that Presents Fact Intensive Questions That Cannot Be Resolved at the Pleading Stage. ... 11

B. The Federal Arbitration Act Does Not Bar ImageFIRST's Counterclaims Nor Does ImageFIRST Seek To Relitigate Those Decisions. ... 12

C. ImageFIRST Plausibly Pleads Counts I and II For Violation of California Law. ... 13

1. Count II (UCL "Unlawful" Prong) is Adequately Pleaded and ImageFIRST Has Standing To Assert It. ... 13

a. Section 16600.1(c) Independently Establishes the UCL Predicate and ImageFIRST's Standing. ... 13

b. Cintas' Section 16600.5(e)(1) Standing Argument Confuses a Direct Enforcement Action with a UCL Claim. ... 15

c. ImageFIRST Pleads Its Own Economic Injury. ............................15

2. Count I (UCL "Unfair" Prong) Is Adequately Pleaded. ........................... 16

a. Cintas' Noerr-Pennington Defense Does Not Defeat Count I. ..........................................................................................16

b. ImageFIRST Has UCL Standing as a Directly Injured Competitor. ......................................................................17

c. The Cel-Tech "Harm to Competition" Standard Is Satisfied, and the "Unlawful" Prong Bypasses It Entirely. ...........................18

D. ImageFIRST Has Plausibly Alleged a Claim under Massachusetts Gen. Laws ch. 93A. ........................................................................................ 18

E. ImageFIRST Has Plausibly Alleged That Cintas' Pattern of Tortious Conduct Constitutes Unfair Competition Under Pennsylvania Common Law. ..................................................................................................... 21

1. Cintas' Sole Challenge to this Counterclaim is Deficient Because ImageFIRST and Cintas Compete for Labor. .......................................... 21

2. Cintas Does Not Otherwise Challenge the Sufficiency of ImageFIRST's Pennsylvania Unfair Competition Claim. ........................ 22

F. ImageFIRST Is Entitled to Seek Its Attorneys' Fees Incurred in Responding to Cintas' Bad Faith Trade Secret Claims. ...................................... 22

G. Dismissal With Prejudice Would Be Improper. .................................................. 24

V. CONCLUSION......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
263 F.3d 239 (3d Cir. 2001)....................7, 8

*Andrew Corp. v. Van Doren Indus., Inc.*,
CIV. A. 88-2414-O, 1990 WL 136779 (D. Kan. July 5, 1990)....................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 23

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972).................... *passim*

*Campbell v. Pa. Sch. Bds. Ass'n*,
972 F.3d 213 (3d Cir. 2020)....................11

*Cynosure, LLC v. Reveal Lasers LLC*,
793 F. Supp. 3d 315 (D. Mass. 2025)....................19, 20

*Eichorn v. AT&T Corp.*,
248 F.3d 131 (3d Cir. 2001)....................21

*Ford Motor Co. v. Nat'l Indemnity Co.*,
972 F. Supp. 2d 862 (E.D. Va. 2013)....................8, 9, 13

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002)....................24

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
806 F.3d 162 (3d Cir. 2015).................... *passim*

*Indivior Inc. v. Reddy's Labs S.A.*,
2020 WL 4932547 (D.N.J. Aug. 24, 2020)....................11

*Montway LLC v. Navi Transp. Servs. LLC*,
826 F. Supp. 3d 532 (D. Del. 2026)....................7, 8, 10

*N.J. Deer Control, LLC v. En Garde Deer Defense, LLC*,
No. 24-5587, 2025 WL 216318 (D.N.J. Jan. 16, 2026)....................23

*Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*,
419 F.3d 462 (6th Cir. 2005) ....................21

*Neural Magic, Inc. v. Meta Platforms, Inc.*,
659 F. Supp. 3d 138 (D. Mass. 2023) ....................20, 21

*Olson v. World Financial Group Ins. Agency, LLC*,
No. 24-CV-00477, 2024 WL 3498572 (N.D. Cal. July 19, 2024)....................16, 17

*Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*,
40 F. Supp. 3d 437 (E.D. Pa. 2014) ....................22, 23

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
368 F.3d 269 (3d Cir. 2004)....................21

*Peek v. Whittaker*,
No. 13-1188, 2014 WL 2154965 (W.D. Pa. May 22, 2014) ....................24

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)....................2, 5, 11

*Pinker v. Roche Holdings Ltd.*,
292 F.3d 361 (3d Cir. 2002)....................5

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
508 U.S. 49 (1993).................... *passim*

*Ruby Slipper Cafe, LLC v. Belou*,
CV 18-1548, 2019 WL 1254897 (E.D. La. Mar. 19, 2019)....................23

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
395 F. Supp. 3d 464 (W.D. Pa. 2019)....................22

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010)....................6

*Synthes (U.S.A.) v. Globus Med., Inc.*,
2005 WL 2233441 (E.D. Pa. Sept. 14, 2005) ....................22

*Takeda Pharm. Co. v. Zydus Pharms. (USA) Inc.*,
358 F. Supp. 3d 389 (D.N.J. 2018) ....................6, 11

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)....................21

*Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*,
728 F.3d 354 (4th Cir. 2013) ....................10, 11

*Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC*,
3:12-CV-559, 2013 WL 785938 (M.D. Tenn. Feb. 28, 2013)........23

**State Cases**

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*
28 Cal. App. 5th 923 (2018)........14

*Brown v. TGS Management Co., LLC*,
57 Cal. App. 5th 303 (2020)........14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)........13, 15, 18

*Edwards v. Arthur Andersen LLP*,
44 Cal.4th 937 (2008)........14

*General Steel Domestic Sales, LLC, et al. v. Bacheller*,
2012 CO 68, 291 P. 3d 1 (2012)........9

*Krafft v. Downey*,
68 A.3d 329 (Pa. Super. Ct. 2013)........24

*Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*,
438 Mass. 459 (2003)........20

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011)........15, 16

**Federal Statutes and Rules**

9 U.S.C. §§ 1 *et seq.*........1, 12

18 U.S. Code § 1836........*passim*

Fed. R. Civ. P. 12(b)(6)........5, 23

Fed. R. Civ. P. 54........22, 23

**State Statutes**

12 PA. C.S.A. § 5305(1)........22

Cal. Bus. & Prof. Code § 16600........*passim*

Cal. Bus. & Prof. Code § 16600.1........13, 18

Cal. Bus. & Prof. Code § 16600.5........13, 18

Cal. Bus. & Prof. Code § 17200 ....................13, 14, 15

Mass. Gen. Laws Chapter 93A ....................5, 18

## I. PRELIMINARY STATEMENT

Cintas is a $10 billion Fortune 500 corporation that has weaponized the legal system to prevent its employees from pursuing better career opportunities. Rather than compete for talent on the merits, Cintas has imposed a web of unlawful and overbroad restrictive covenants on tens of thousands of employees, sent threatening demand letters to those who dare to leave, retaliated against employees' family members, and launched a campaign of meritless arbitrations and litigation—all designed to intimidate its workforce into staying put and to burden ImageFIRST, a far smaller company, with substantial legal costs. Across four arbitrations, Cintas has not obtained a single finding of wrongdoing, a single dollar in damages, or a single injunction. The only arbitration to reach a full evidentiary hearing ended with the arbitrator rejecting every one of Cintas' claims and then denying Cintas' attempt to reconsider that decision. Yet Cintas presses on, because the point was never to vindicate legitimate rights—it was to send a message.

ImageFIRST's Counterclaims challenge this campaign under the unfair competition laws of California, Massachusetts, and Pennsylvania, and seek attorneys' fees for Cintas' bad faith trade secret claims under the Defend Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"). Cintas now moves to dismiss, advancing three principal arguments—each of which fails. First, Cintas invokes the *Noerr-Pennington* doctrine, but the vast majority of the challenged conduct—*e.g.*, imposing void restrictive covenants, threatening and intimidating employees, retaliating against employees' family members—is private commercial conduct unrelated to government petitioning. To the extent petitioning conduct is implicated, the sham litigation exception applies and cannot be resolved at the pleading stage. Second, Cintas argues the Federal Arbitration Act bars ImageFIRST from referencing the arbitrations, but ImageFIRST does not seek to relitigate or vacate any arbitral decision; it cites the arbitrations as evidence of Cintas' broader pattern of baseless enforcement. Third, Cintas raises state-law-specific

challenges—standing, harm to competition, geographic nexus, and the competition requirement—none of which warrant dismissal at the pleading stage.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

The following facts are drawn from ImageFIRST's Counterclaims (DI 68) and must be accepted as true for purposes of this Motion. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

### A. The Parties

Cintas is a Fortune 500 corporation with over $10 billion in annual revenue, more than 45,000 employees, and over one million customers. DI 68, Counterclaims ¶ 13. Its principal business lines are uniform rental, facility maintenance products, and fire protection services. *Id*. Although Cintas maintains a healthcare-oriented division, that division focuses on uniforms, garments, and facility products—not flat linens. *Id*. ¶¶ 20–21. Cintas offers flat linen products in only limited markets in portions of Washington, Minnesota, and Louisiana. *Id*. ¶ 20.

ImageFIRST is headquartered in King of Prussia, Pennsylvania, with approximately $700 million in annual revenue and 4,000 employees. *Id*. ¶¶ 7, 14. Its core business is laundering and supplying flat linen textiles to healthcare customers, which accounts for approximately 80 to 90 percent of its revenue. *Id*. ¶¶ 14, 22. Any overlap between the two companies' offerings is limited to a narrow category of items such as surgical scrubs. *Id*. ¶ 22.

### B. Cintas' Restrictive Covenants

Cintas requires substantially all of its sales, operations, and management employees to execute standardized form agreements containing restrictive covenants as a mandatory condition of employment. *Id*. ¶ 30. These agreements are not individually negotiated. *Id*. The specific terms vary by state, but share a common structure: broad, overlapping prohibitions on competition, customer solicitation, employee solicitation, and the use of information defined so expansively as

to encompass virtually any non-public knowledge an employee acquired during their tenure. *Id.* ¶¶ 28–30, 80–82. In California, the agreements impose twelve-month customer and employee non-solicitation covenants and an indefinite non-disclosure covenant that prohibits the "use" of broadly defined "Confidential Material and Information"—provisions ImageFIRST alleges are void under California Business and Professions Code Section 16600. *Id.* ¶¶ 31–36. In Massachusetts, the agreements impose twenty-four-month non-competition, customer non-solicitation, and employee non-solicitation covenants extending to the "entire United States or in any other international market." *Id.* ¶ 37. Similar restrictions of varying duration apply in Illinois, New Jersey, Minnesota, and South Dakota. *Id.* ¶¶ 38, 44–48. Cintas' own Complaint concedes that these covenants "may not be enforceable in all respects under all the relevant state laws." *Id.* ¶ 49 (citing DI 1, Compl. ¶ 90). Despite this concession, Cintas has aggressively sought to enforce the unlawful covenants in the agreements as part of a deliberate strategy to use the threat and expense of litigation to prevent employees from leaving Cintas and to prevent ImageFIRST from operating and expanding its employee pool. *Id.*

**C. Cintas' Campaign of Enforcement**

Since October 2024, Cintas has pursued a systematic enforcement campaign against former employees who joined ImageFIRST, including sending threatening demand letters, retaliating against their family members, calling and texting former employees to pressure them not to join other laundry companies, filing four separate arbitration proceedings, and filing this federal lawsuit. *Id.* ¶¶ 2–3, 50–51, 77.

The *Hilderbrand* Arbitration. In October 2024, Cintas filed an arbitration against David Hilderbrand, whom ImageFIRST had hired in September 2024. *Id.* ¶¶ 53, 55. After full discovery and a multi-day evidentiary hearing, the arbitrator issued a Final Award on April 9, 2026, rejecting every one of Cintas' claims—finding, *inter alia*, "no direct evidence" of misappropriation, that the

companies' business models have only a "sliver of overlap," and that they "appear more like the 'merest' rather than the 'fiercest' competitors." *Id*. ¶¶ 58, 83(d). Cintas' motion to reconsider the Final Award was denied on June 16, 2026. *Id*. ¶ 60.

The *Zuidema* Arbitration. Also in October 2024, Cintas filed an arbitration against Mikael Zuidema, who had left Cintas several months earlier in March 2024 and worked at an unrelated company before joining ImageFIRST. *Id.* ¶¶ 54–55. Cintas quickly withdrew the arbitration after Zuidema provided a declaration confirming he had not taken or used any Cintas confidential information, obtaining no injunction, no damages, and no finding of wrongdoing. *Id.* ¶ 57.

The *Ray* Arbitration. In April 2025, Cintas filed an arbitration against Shelby Ray, whom ImageFIRST had hired in March 2025. *Id.* ¶¶ 61, 63. Less than two months later, Cintas voluntarily dismissed the arbitration, and the parties entered into a mutual release in which Cintas obtained no damages, no injunction, and no admission of wrongdoing. *Id.* ¶¶ 64–65.

The *Brosnan* Arbitration. Cintas filed an arbitration against Brian Brosnan, a Massachusetts resident whom ImageFIRST hired in February 2025. *Id.* ¶¶ 66–67. That arbitration remains pending. ImageFIRST alleges that after Brosnan left Cintas and joined ImageFIRST Cintas retaliated against Brosnan's wife, Krystle Cornetta, a fifteen-year Cintas employee, by demoting her while she was on maternity leave and ultimately terminating her employment—telling her the reassignment was "because of her husband." *Id.* ¶ 68.

The Lunetta Cease-and-Desist Letter. In November 2025, Cintas' counsel sent a cease-and-desist letter to Nellie Lunetta, a California-based former employee whom ImageFIRST had hired in October 2025. *Id.* ¶¶ 69–70. The letter failed to identify any specific act of solicitation or misappropriation and was, on its face, a demand that Lunetta cease working for ImageFIRST—which is prohibited under California law. *Id.* ¶ 71.

Across all four arbitrations, Cintas has not obtained a single finding of wrongdoing, a single dollar in damages, or a single injunction. *Id*. ¶¶ 52, 78.

### D. Procedural History

Cintas filed this lawsuit on January 16, 2026, asserting claims under the DTSA, PUTSA, and various common law theories. DI 1. On March 30, 2026, Cintas filed a motion for preliminary injunction seeking, among other things, to prohibit ImageFIRST from employing anyone with Cintas work experience. DI 68, Counterclaims ¶ 75. On May 19, 2026, the Court denied both the preliminary injunction motion and ImageFIRST's motion to dismiss the complaint. *See* DI 54.

On June 17, 2026, ImageFIRST filed its Answer, Defenses, and Counterclaims, asserting six counterclaims: (1) unfair business practices under California's UCL (Count I); (2) unlawful business practices under California's UCL (Count II); (3) violation of Massachusetts General Laws Chapter 93A (Count III); (4) unfair competition under Pennsylvania common law (Count IV); and (5)–(6) bad faith trade secret claims under the DTSA and PUTSA (Counts V and VI). DI 68. On July 22, 2026, Cintas filed the instant Motion to Dismiss ImageFIRST's Counterclaims. DI 84.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain well-pleaded, nonconclusory allegations that state a "plausible claim for relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679–80 (2009). In evaluating plausibility, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A complaint may not be dismissed if it states "enough factual matter (taken as true) . . . to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In ruling on a motion to dismiss,

the Court must draw all reasonable inferences in the plaintiff's favor. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Applying this standard, Cintas' Motion must be denied.

## IV. ANALYSIS

### A. The *Noerr-Pennington* Doctrine Does Not Bar ImageFIRST's Counterclaims.

Cintas' *Noerr-Pennington* argument fails for three reasons, each of which independently defeats dismissal. First, and most fundamentally, *Noerr-Pennington* does not apply to a substantial portion of the challenged conduct because that conduct has no connection whatsoever to any governmental petition and is instead non-petitioning commercial activity. This includes Cintas' imposition of overbroad restrictive covenants, threats against employees and former employees, retaliation against employees' family members, and four meritless arbitration proceedings. DI 68, Counterclaims ¶¶ 2–4, 31–68, 80–90.

Second, even if the letters Cintas sent to former employees, such as Nellie Lunetta, or the arbitrations are petitioning conduct (they are not), these acts—together with the federal lawsuit—must be judged holistically to determine whether the sham litigation exception applies. *See Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015) (concluding that when dealing with a series of petitions "a court should perform a holistic review that may include looking at the defendant's filing success—i.e., win-loss percentage—as circumstantial evidence of the defendant's subjective motivations"). The Counterclaims plead that Cintas has repeatedly pursued litigation, arbitrations, and other enforcement mechanisms with no evidentiary support, not to seek a merits determination but rather to weaponize those enforcement mechanisms to serve Cintas' improper goals.

Third, the well-established rule in the Third Circuit is that the *Noerr-Pennington* affirmative defense is not appropriate for resolution on a pleading motion when the facts are in dispute. *See Takeda Pharm. Co. v. Zydus Pharms. (USA) Inc.*, 358 F. Supp. 3d 389, 394 (D.N.J.

2018) (collecting cases); *see also Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 63 (1993).

Each is discussed in turn.

### 1. ImageFIRST's Counterclaims Are Based on a Series of Acts by Cintas, Much of Which Is Commercial Conduct and Does Not Involve Government Petitioning.

Cintas attempts to recast its conduct as First Amendment protected activity under *Noerr-Pennington*, but that doctrine is limited exclusively to petitioning the government. *Noerr-Pennington* does not immunize non-petitioning conduct, even where petitioning conduct may also be alleged. *See Hanover 3201 Realty*, 806 F.3d at 178; *see also A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 251 (3d Cir. 2001).

The Counterclaims detail a course of conduct that includes far more than petitioning the government, including:

- *The Calls and Texts*: Cintas' agents directly called and texted former Cintas employees with threats not to join other laundry companies. DI 68, Counterclaims ¶¶ 3, 68, 84. These communications were not directed to any court or governmental body; they were private commercial coercion directed at individuals. *Noerr-Pennington* is categorically inapplicable.

- *The Cornetta Retaliation*: To strike back at ImageFIRST and Brian Brosnan, Cintas demoted Brosnan's wife, Krystle Cornetta, a fifteen-year Cintas employee, while she was on maternity leave, and terminated her employment—expressly telling her the action was "because of her husband." *Id.* ¶ 68. This is a private employment decision targeting a third party who had no involvement in any litigation. It is not petitioning any court, agency, or government body. It is independently tortious under numerous state and federal laws. *Noerr-Pennington* does not apply.

- *The Cease and Desist Letters*: Cintas' November 2025 letter to Nellie Lunetta threatened no litigation, identified no specific act of wrongdoing, and was—by Cintas' own admission—merely a letter "reminding Lunetta of her obligations." DI 84-1, Mot. at 5. No arbitration or litigation has been filed against Lunetta. *Noerr-Pennington* simply "does not apply to third-party correspondence that does not threaten litigation." *Montway LLC v. Navi Transp. Servs. LLC*, 826 F.

Supp. 3d 532, 540 (D. Del. 2026). The cease-and-desist letters sent to Shelby Ray and David Hilderbrand are no different. DI 68, Counterclaims ¶¶ 39, 62.

- *The Covenant Imposition*: Cintas' use of overbroad and unlawful restrictive covenants across the country—including covenants Cintas has admitted are not enforceable—as a means to prevent employees from leaving and to remove a substantial share of the experienced professional workforce from the available talent pool, is commercial conduct, not governmental petitioning. *Id.* ¶¶ 2, 28–36, 37–48, 49, 80–83. This regime of imposing void restrictive covenants on tens of thousands of employees—before any dispute arose—is not subject to *Noerr-Pennington*. *See A.D. Bedell*, 263 F.3d at 251.

- *The Arbitrations*: Cintas' initiated four arbitration proceedings designed to intimidate employees and deprive ImageFIRST of the full productive capacity of the employees it hired, without evidence of wrongdoing to support the arbitration demands. DI 68, Counterclaims ¶¶ 49, 52, 55-60, 63-65, 67. Notably, Cintas does not assert that the four arbitration proceedings are petitioning conduct that is protected by the First Amendment and has waived any argument that they are petitioning conduct.[1] *See* DI 84-1, Mot. at 7–9.

None of this conduct is related to petitioning the government. Cintas does not argue otherwise. Instead, Cintas cherry-picks references to threats of litigation and the present lawsuit while ignoring the extensive non-petitioning conduct. DI 84-1, Mot. at 7–9.

*Noerr-Pennington* does not immunize non-petitioning conduct simply because petitioning conduct may also be alleged. *A.D. Bedell*, 263 F.3d at 251. Nor can private parties retroactively immunize pre-petition anticompetitive acts by subsequently petitioning the courts. *Id.* Critically, Cintas does not contend that without the specific conduct it claims is protected, any specific claim lacks sufficient factual allegations to proceed. DI 84-1, Mot. at 7–9. Thus, even if Cintas is correct that its conduct with respect to the present litigation and the threatening letters is protected by the

[1] In any event, the more recent cases to consider the issue make clear that "*Noerr-Pennington*, like the First Amendment itself, does not cover petitions to private entities." *See Montway*, 826 F. Supp. 3d at 539; *see also Ford Motor Co. v. Nat'l Indemnity Co.*, 972 F. Supp. 2d 862, (E.D. Va. 2013) (concluding that "the institution of private arbitration before a private organization does not implicate the First Amendment's prohibition . . . to petition" and *Noerr-Pennington* does not apply).

First Amendment under *Noerr-Pennington* (as discussed above and in Section IV.A.2 below, they are not), Cintas' argument nevertheless fails.

**2. A Holistic Review of Cintas' Conduct Demonstrates that Any Petitioning Conduct Was Nothing More than an Attempt to Interfere With a Perceived Market Rival.**

As the Third Circuit has explained, *Noerr-Pennington* is "not absolute." *Hanover 3201 Realty*, 806 F.3d at 178. When petitioning conduct forms part of a series of acts, the conduct must be evaluated under *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972). *See Hanover 3201 Realty,* 806 F.3d at 180 (holding that "a more flexible standard is appropriate when dealing with a pattern of petitioning" and that that *California Motor*, not *Professional Real Estate*, applies). Under this standard, "the question is not whether any one of [the acts] has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Id.* Here, Cintas' conduct exhibits exactly this disregard for the merits.

The arbitrations filed by Cintas are prime examples. Cintas initiated four arbitrations against former employees who joined ImageFIRST. DI 68, Counterclaims ¶ 77. The *Ray* arbitration was voluntarily dismissed after Ray asserted counterclaims. *Id.* ¶¶ 63, 64; *see also* DI 84-3, Ex. C ¶¶ 1, 3. The *Zuidema* arbitration was quickly withdrawn without any adjudication on the merits. DI 68, Counterclaims ¶ 57. The *Hilderbrand* arbitration resulted in all claims being rejected (twice). *Id.* ¶ 58. None resulted in any finding that ImageFIRST misappropriated Cintas' trade secrets. *Id.* ¶¶ 52, 78. And in all four, Cintas concedes it filed suit without evidence to support its misappropriation claims. *Id.* ¶¶ 78, 79.

Thus, even if the arbitrations were considered petitioning conduct—a proposition that Cintas does not advance and the more recent case law does not support, *see Ford Motor Co.*, 972 F. Supp. 2d at 869; *General Steel Domestic Sales, LLC, et al. v. Bacheller*, 2012 CO 68, 291 P. 3d

1, 9–10 (2012) (*Noerr–Pennington* doctrine inapplicable where defendants initiated a private arbitration action pursuant to an employment agreement; they did not petition any branch of government for a redress of grievances)—they still fall within the sham exception as part of the broader pattern of conduct. *See Hanover 3201 Realty*, 806 F.3d at 180.

Cintas' pattern of sending baseless cease-and-desist letters to ImageFIRST employees must also be considered in this analysis. Whether these letters constitute petitioning conduct is in dispute. Cintas argues that they are petitioning conduct. DI 84-1, Mot. at 7–9. As discussed above, because the letters do not threaten litigation, they are not petitioning conduct. *See Montway*, 826 F. Supp. 3d at 540. Indeed, with respect to the Lunetta Letter, as Cintas itself has pointed out "[n]o arbitration or other claims have yet been filed against Lunetta." DI 84-1, Mot. at 5. What is clear is that, regardless of their status as petitioning activity, the cease-and-desist letters are part-and-parcel of Cintas' pattern of sham activity and qualify as a series of conduct, further cementing *California Motor* as the proper standard here.

The same is true for the current litigation and Cintas' motion for preliminary injunction. Under *Hanover 3201*, these actions must be viewed together within the larger scheme. 806 F.3d at 180. In forming its decision, the court may look at Cintas' filing success in the prior actions, here the arbitrations, as well as circumstantial evidence of Cintas' subjective motivations. *Id.* In *Hanover 3201*, four actions were sufficient to form a pattern; here the alleged conduct is far more extensive. *Id.* at 181. Nor does the fact that Cintas survived a motion to dismiss demonstrate that this litigation is not subject to the sham exception. *See Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 365 (4th Cir. 2013) ("[T]he fact that there may be moments of merit within a series of lawsuits is not inconsistent with a campaign of sham litigation, for 'even a broken clock is right twice a day.'").

### 3. *Noerr-Pennington* Is an Affirmative Defense that Presents Fact Intensive Questions That Cannot Be Resolved at the Pleading Stage.

*Noerr-Pennington* is an affirmative defense, not a jurisdictional bar. *See Waugh Chapel South*, 728 F.3d at 360. At this stage, ImageFIRST need only allege sufficient facts from which the Court can plausibly infer that the alleged violations occurred and that they either do not constitute protected petitioning conduct or are subject to the sham exception. *See Phillips*, 515 F.3d at 234. The Supreme Court has explained that courts may only decide *Noerr-Pennington* at the pleading stage where "there is no dispute over the predicate facts of the underlying legal proceeding." *Professional Real Estate*, 508 U.S. at 63. Courts in this circuit regularly decline to reach *Noerr-Pennington* at the pleading stage. *See, e.g., Takeda Pharm.*, 358 F. Supp. 3d at 394 (collecting cases); *Indivior Inc. v. Reddy's Labs S.A.*, 2020 WL 4932547, at *8 (D.N.J. Aug. 24, 2020).

Moreover, even under the more restrictive test of *Professional Real Estate*—which only applies when a single act of petitioning is at issue—dismissal is inappropriate.[2] ImageFIRST alleges that Cintas filed suit "without a shred of evidence showing that ImageFIRST did anything wrong," DI 68, Counterclaims ¶ 5, that Cintas "cannot identify with reasonable specificity the alleged trade secrets misappropriated by ImageFIRST," and that its trade-secret claims are "objectively specious" because Cintas "alleged no facts supporting any actual or threatened misappropriation by ImageFIRST," *id.* ¶¶ 143, 145. ImageFIRST further alleges that Cintas "could

---

[2] Even applying the two-part test of *Professional Real Estate*, ImageFIRST has alleged sufficient facts that plausibly establish that the current litigation is objectively baseless because "no reasonable litigant could realistically expect to secure favorable relief" and that Cintas' "actual motivation is to dragoon the governmental process itself into use as a competitive tool." *See Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 219 (3d Cir. 2020) (quoting *Professional Real Estate*, 508 U.S. at 62). But, as explained above, *California Motor*, not *Professional Real Estate*, applies. Indeed, even Cintas contends that the petitioning conduct in dispute is more than the present litigation. *See* DI 84-1, Mot. at 7–9.

not have suffered any economic harm from the alleged misappropriation," *id.* ¶¶ 143, 152, while reaping the collateral benefit its campaign was designed to achieve: Cintas' own Senior Vice President testified that employee departures "slowed down" once the litigation campaign began, *id.* ¶¶ 78–79. These facts are in dispute. Thus, even under *Professional Real Estate* dismissal at this stage is inappropriate. *See Professional Real Estate*, 508 U.S. at 63.

For all the reasons explained above, ImageFIRST has more than cleared the hurdle of alleging sufficient facts from which it can be plausibly inferred that Cintas committed the alleged violations and that these violations were undertaken without regard to the underlying merits. Accordingly, under either *California Motor* or *Professional Real Estate* Cintas' dismissal of ImageFIRST's well pleaded allegations that relate to petitioning under *Noerr-Pennington* at the pleadings stage should be denied.

### B. The Federal Arbitration Act Does Not Bar ImageFIRST's Counterclaims Nor Does ImageFIRST Seek To Relitigate Those Decisions.

ImageFIRST neither asks the Court to relitigate the arbitration decisions nor seeks to vacate, modify, or revisit them. The Counterclaims plead that the arbitrations form part of a pattern of conduct by Cintas to harm a perceived industry rival. DI 68, Counterclaims ¶ 6. None of the arbitrations, including the pending *Brosnan* arbitration, have resulted in any finding of wrongdoing. The *Hilderbrand* arbitration resulted in all claims being denied. *Id.* ¶¶ 58–60. The *Ray* arbitration was voluntarily dismissed. *Id.* ¶¶ 64–65. The *Zuidema* matter was resolved without adjudication on the merits. *Id.* ¶¶ 56–57. The arbitrations thus constitute evidence of the intentionally meritless nature of Cintas' challenges and are one piece in the larger picture of Cintas' unlawful commercial behavior. *Id.* ¶ 74.

Nothing in the FAA grants a party immunity from liability for allegedly anticompetitive or unfair conduct merely because arbitration was one component of the challenged course of conduct.

The FAA protects arbitration agreements and arbitral processes; it does not provide blanket protection for all conduct that precedes or accompanies arbitration. Courts that have addressed this issue reject the argument that the FAA serves as such a barrier. *See Ford Motor Co.*, 972 F. Supp. 2d at 868–69.

**C. ImageFIRST Plausibly Pleads Counts I and II For Violation of California Law.**

Cintas mischaracterizes ImageFIRST's California counterclaims as an attack on litigation conduct. Counts I and II allege that Cintas, by imposing void restrictive covenants on its California employees—including overly broad confidentiality obligations that serve as *de facto* non-competes—and then threatening and pursuing litigation against those employees and their new employer, has engaged in conduct that offends the public policies embodied in California Business and Professions Code Sections 16600, 16600.1, and 16600.5. DI 68, Counterclaims ¶¶ 36, 95. Those provisions, as amended effective January 1, 2024, declare that including void covenants in an employment contract is an independent "act of unfair competition within the meaning of" California's UCL. *See* Cal. Bus. & Prof. Code § 16600.1(c).

**1. Count II (UCL "Unlawful" Prong) is Adequately Pleaded and ImageFIRST Has Standing To Assert It.**

**a. Section 16600.1(c) Independently Establishes the UCL Predicate and ImageFIRST's Standing.**

Count II is a UCL section 17200 "unlawful" prong claim. The "unlawful" prong "borrows violations of other laws" and makes them independently actionable, whether or not the predicate statute itself provides a private right of action in favor of the UCL plaintiff. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999) (citation omitted).

Section 16600.1(a) makes it "unlawful to include a noncompete clause in an employment contract," and Section 16600.1(c) declares that "[a] violation of this section constitutes an act of unfair competition within the meaning of Chapter 5 (commencing with Section 17200)." Thus, a

Section 16600.1 violation is a *per se* act of UCL "unfair competition," and any person with UCL standing under Section 17204—not just a contracting party—may enforce it.

ImageFIRST pleads that Cintas required its California-based employees—including Nellie Lunetta, Ryan Hartzheim, Parris Pisiona, and Edgar Sandoval—to sign agreements containing restrictive covenants including twelve-month customer and employee non-solicitation provisions. DI 68, Counterclaims ¶¶ 108–109. ImageFIRST alleges these provisions (and the agreements that contain them) are illegal and unenforceable under California law and that California courts will not "blue pencil" them. Counterclaims ¶ 32. Those allegations establish—for purposes of this Motion—a *per se* violation of Section 16600.1 and, by legislative declaration, a *per se* act of unfair competition in violation of Section 17200.

This characterization is well-grounded in California law. In *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 955 (2008), the California Supreme Court held that Section 16600 prohibits nearly every restraint on an employee's ability to practice a lawful profession—not merely classic non-compete agreements. Confidentiality and non-solicitation provisions so broadly drafted as to effectively preclude a former employee from working in his or her field constitute non-compete clauses within the meaning of Section 16600. *See Brown v. TGS Management Co., LLC*, 57 Cal. App. 5th 303, 320 (2020); *see also, AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* 28 Cal. App. 5th 923, 940 (2018) (finding confidentiality provisions illegal under § 16600 where confidential information defined in way that interferes with employee's right to compete). Here, ImageFIRST alleges that Cintas' provisions broadly define "trade secrets" to encompass customer lists, contact information, and purchasing history, and prohibit any contact with Cintas customers

for twelve months—restrictions that effectively bar former employees from performing comparable functions at any competitor. DI 68, Counterclaims ¶¶ 31–36, 108–109.

**b. Cintas' Section 16600.5(e)(1) Standing Argument Confuses a Direct Enforcement Action with a UCL Claim.**

Cintas argues that Section 16600.5(e)(1) creates a private right of action only for employees and that ImageFIRST lacks standing. DI 84-1, Mot. at 13. This argument misidentifies the cause of action. Count II is brought under Business and Professions Code Section 17200, not Section 16600.5(e)(1), and standing is governed by Section 17204, which requires only that a plaintiff have suffered injury in fact and has lost money or property as a result of the unfair competition. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323–24 (2011). The UCL "unlawful" prong may be predicated on statutes that do not themselves provide a private right of action to the UCL plaintiff. *Cel-Tech*, 20 Cal. 4th at 180. Thus, the employee-only limitation in Section 16600.5(e)(1) governs direct enforcement of Section 16600, not who may bring a UCL claim borrowing its predicate violations.

Regardless, Section 16600(c) independently disposes of Cintas' argument. As amended effective January 1, 2024, it provides: "This section shall not be limited to contracts where the person being restrained from engaging in a lawful profession, trade, or business is a party to the contract." Cal. Bus. & Prof. Code § 16600(c). None of the cases Cintas cites considered this amendment. The Legislature expressly extended Section 16600's protection to non-contracting parties—demolishing the premise that only Cintas' employees can invoke Section 16600 violations as UCL predicates.

**c. ImageFIRST Pleads Its Own Economic Injury.**

ImageFIRST has suffered concrete economic injury in California traceable to Cintas' unlawful conduct. Specifically: (1) ImageFIRST incurred direct costs in responding to Cintas'

November 2025 cease-and-desist demand directed at Nellie Lunetta, a California-based employee, including legal fees and the disruption of Lunetta's ability to perform her Director of National Accounts role (DI 68, Counterclaims ¶¶ 69–72); (2) Cintas' pattern of enforcement against California employees has chilled prospective California-based employees from joining ImageFIRST, reducing the available talent pool for ImageFIRST's California-based operations and forcing ImageFIRST to expend additional recruiting resources (*id.* ¶¶ 87–90); and (3) ImageFIRST lost the benefit of Nellie Lunetta's California-based account relationships at the critical period following her hire in October 2025, when Cintas' demand letter—which purported to restrict her from contacting California accounts she had previously serviced—created uncertainty about the scope of her permitted activities (*id.* ¶¶ 70–71).

These are not speculative or abstract injuries. They constitute "lost money or property" within the meaning of *Kwikset Corp.*, 51 Cal. 4th at 321, which requires only that the plaintiff "lost money or property as a result of unfair competition"—a standard ImageFIRST satisfies through the economic costs directly caused by Cintas' unlawful enforcement campaign. *See Olson v. World Financial Group Ins. Agency, LLC*, No. 24-CV-00477, 2024 WL 3498572, at *6–7 (N.D. Cal. July 19, 2024) (GFI sufficiently pled injury in fact by asserting it "would have been able to hire more agents, earn more revenues, and increase the value and profits of the company, if not for the illegal Restrictive Covenants in WFG's agreements with its agents, and Defendants' wrongful threats to WFG agents who join GFI and/or subsequently recruited on GFI's behalf.").

**2. Count I (UCL "Unfair" Prong) Is Adequately Pleaded.**

**a. Cintas' Noerr-Pennington Defense Does Not Defeat Count I.**

Cintas argues that ImageFIRST's allegations of threatening and pursuing litigation are precluded by *Noerr-Pennington*. DI 84-1, Mot. at 8. For the reasons set forth in Section IV.A, *supra*, this argument fails. The UCL claims are grounded in Cintas' commercial practice of

drafting, imposing, and deploying a standardized regime of void covenants—conduct that exists entirely in the private commercial sphere. To the extent petitioning conduct is implicated, the sham litigation exception applies and cannot be resolved at the pleading stage.

**b. ImageFIRST Has UCL Standing as a Directly Injured Competitor.**

Cintas argues that a competitor lacks standing to bring a UCL claim "based solely on provisions in contracts to which it is not a party," citing *Olson*, 2024 WL 3498572, at *5. DI 84-1, Mot. at 12. But *Olson* does not bar Count I — it supports it. The *Olson* court expressly held that a competitor may have UCL standing where its claim is also based on "wrongful threats against [prospective employees]"—conduct "separate from, and not based on, the contracts." *Id.* at *6.

Count I does exactly what *Olson* invited. ImageFIRST challenges conduct separate from the unlawful contracts: Cintas "engaged in other intimidation tactics, including calling and texting former employees to threaten and pressure them not to join other laundry companies," "sent numerous threatening demand letters," including a letter to Lunetta that failed to identify any specific act of solicitation, and used the "threat and reality of litigation" to prevent employee mobility. DI 68, Counterclaims ¶¶ 2, 51, 70–71, 100. ImageFIRST also alleges that Cintas intentionally drafted its covenants to fool employees into believing any solicitation is prohibited. *Id.* ¶ 33. Furthermore, Section 16600(c)'s 2024 amendment expressly provides that Section 16600

"shall not be limited to contracts where the person being restrained . . . is a party to the contract," eliminating the foundational premise of Cintas' standing argument.

**c. The Cel-Tech "Harm to Competition" Standard Is Satisfied, and the "Unlawful" Prong Bypasses It Entirely.**

Cintas argues that the UCL "unfair" prong requires allegations of harm to competition, not just to ImageFIRST. DI 84-1, Mot. at 14. This argument has two fatal defects.

First, *Cel-Tech*'s heightened "harm to competition" standard only applies to the "unfair" prong—not the "unlawful" prong. For an "unlawful" claim, any violation of law suffices without an additional showing of harm to competition. *Cel-Tech*, 20 Cal. 4th at 180. Because Counts I and II both allege that Cintas' conduct is "unlawful" in that it violates Sections 16600, 16600.1, and 16600.5, *Cel-Tech* is inapplicable to that portion of the Counterclaims.

Second, the Counterclaims satisfy the *Cel-Tech* standard. ImageFIRST alleges that Cintas has asserted contractual rights it does not have and used the threat of litigation to coerce compliance with void provisions and agreements. DI 68, Counterclaims ¶ 100. ImageFIRST pleads that a standardized regime of void employment covenants deployed across all Cintas employees suppresses labor-market mobility industry-wide—harming not just one competitor but competition for talent across the entire healthcare laundry sector. *Id.* ¶¶ 6, 28, 30, 74, 95, 111. That conduct "violates the policy or spirit" of California's pro-competition statutes, satisfying *Cel-Tech*, 20 Cal. 4th at 187.

**D. ImageFIRST Has Plausibly Alleged a Claim under Massachusetts Gen. Laws ch. 93A.**

ImageFIRST plausibly alleges Count III under Chapter 93A because the challenged conduct occurred in Massachusetts, targeted ImageFIRST's Massachusetts operations, and caused harm within the Commonwealth. Chapter 93A requires that the allegedly unfair conduct occur "primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. To

answer that question, courts apply a "center of gravity" test, examining the place of conduct and the situs of loss. *Auto Shine Car Wash Sys. v. Nice 'n Clean Car Wash, Inc.*, 58 Mass. App. Ct. 685, 689 (2003). While the center of gravity test cannot "be reduced to any precise formula" or "factors," courts often consider "(1) where the defendant commits the unfair or deceptive act or practice; (2) where the plaintiff receives or acts on the wrongful conduct; and (3) where the plaintiff sustained losses caused by the wrongful conduct." *Cynosure, LLC v. Reveal Lasers LLC*, 793 F. Supp. 3d 315, 354-355 (D. Mass. 2025) (gathering cases).

ImageFIRST alleges that Cintas required Brian Brosnan, a Massachusetts resident, to execute a Massachusetts employment agreement containing a nationwide, twenty-four-month noncompetition covenant and broad solicitation restrictions. DI 68, Counterclaims ¶¶ 37, 81(a). After Brosnan left Cintas and began working for ImageFIRST from North Attleboro, Massachusetts, Cintas invoked that Massachusetts agreement and filed a Massachusetts arbitration proceeding against him. *Id*. ¶¶ 66–68, 123(a). ImageFIRST alleges that Cintas used that proceeding to restrain Brosnan's Massachusetts-based work as Vice President of Continuous Improvement and, later, Vice President of Sales for the Northeast. *Id.* ¶¶ 66–67, 87–88, 123(d)–(e). Those actions disrupted ImageFIRST's Massachusetts-based operations, impaired its ability to recruit and pursue business opportunities there, and caused reputational and economic injury in the Commonwealth. *Id.* ¶¶ 123(d)–(f), 124–25.

These allegations more than plausibly demonstrate that the center of gravity of the unfair and deceptive conduct alleged in Count III is Massachusetts. Cintas committed the unfair or deceptive act or practice in Massachusetts by targeting Brosnan—a Massachusetts resident employed by ImageFIRST in Massachusetts—with a Massachusetts arbitration demand invoking a Massachusetts employment agreement specifically chosen because it contains a nationwide, 24-

month noncompetition covenant. *Id.* ¶¶ 66–67. Cintas did not file this arbitration in Ohio (Cintas' home state) or Pennsylvania (ImageFIRST's home state)—it invoked a Massachusetts agreement against a Massachusetts employee working in Massachusetts.

ImageFIRST also "received the wrongful conduct" in Massachusetts, where Brosnan's disrupted work caused operational harm to ImageFIRST's Massachusetts-based operations, including his role as Vice President of Continuous Improvement and, later, Vice President of Sales for the Northeast. *Id.* ¶¶ 67, 123(d)–(e). And ImageFIRST sustained losses in Massachusetts: the disruption to Brosnan's Massachusetts-based work, the chilling effect on ImageFIRST's Massachusetts operations, and the reputational harm to ImageFIRST in the Massachusetts healthcare linen market caused by Cintas' campaign to label ImageFIRST as a company whose employees will face enforcement litigation. *Id.* ¶¶ 123(d)–(f), 124–25; *see Cynosure*, 793 F. Supp. 3d at 355 (center of gravity satisfied where defendant "reached into Massachusetts to recruit [key employee], who both lived and was employed by [plaintiff] in the state").

Critically, the burden of proving that this conduct did not occur primarily and substantially in Massachusetts rests with Cintas. *Cynosure*, 793 F. Supp. 3d at 355; *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 438 Mass. 459, 470 (2003). At the pleading stage, Cintas cannot meet this burden as a matter of law. Whether the center-of-gravity test is ultimately satisfied is exactly the fact-intensive inquiry reserved for after discovery, and Cintas' lead authority, *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138 (D. Mass. 2023), does not support dismissal. *Neural Magic* was decided on summary judgment, after full discovery, on a record establishing that the defendant's wrongful acts were not directed at Massachusetts. *Id.* at 184. Here, ImageFIRST alleges affirmative Massachusetts-directed conduct. Whether that conduct satisfies

the center-of-gravity test is exactly the kind of fact-intensive question *Neural Magic* resolved only after discovery—not at the pleading stage.

### E. ImageFIRST Has Plausibly Alleged That Cintas' Pattern of Tortious Conduct Constitutes Unfair Competition Under Pennsylvania Common Law.

#### 1. Cintas' Sole Challenge to this Counterclaim is Deficient Because ImageFIRST and Cintas Compete for Labor.

Cintas' sole argument in support of dismissing this claim is that ImageFIRST has repeatedly pled that it does not compete with Cintas and thus cannot satisfy the elements of the claim. DI 84-1, Mot. at 16–18. That argument fails for two independent reasons. First, ImageFIRST has alleged that it does not compete with Cintas ***for customers***—but its claim is premised on competition in the labor market, which is analytically distinct. *See Todd v. Exxon Corp*., 275 F.3d 191, 199–200 (2d Cir. 2001). Second, Cintas' reliance on the judicial admissions doctrine is misplaced because ImageFIRST's prior statements about product-market competition do not clearly and unambiguously concede that the parties do not compete for labor. *See Parilla v. IAP Worldwide Servs., VI, Inc*., 368 F.3d 269, 275 (3d Cir. 2004). To the contrary, Cintas' own Complaint—which repeatedly characterizes ImageFIRST as a "competitor" and alleges systematic recruitment of Cintas employees, *see* DI 1, Compl. ¶¶ 3, 5, 18, 24—constitutes a binding judicial admission that the parties do, in fact, compete.

Federal courts have long recognized that employers compete in labor markets. *See Eichorn v. AT&T Corp*., 248 F.3d 131, 140–41 (3d Cir. 2001); *Todd*, 275 F.3d at 202. Employers are deemed competitors when employees view them as "being reasonably good substitutes." *Todd*, 275 F.3d at 202. The touchstone is employee mobility: if workers can perform the same or similar functions for both firms, those firms compete for labor regardless of whether they compete for customers. *See Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 472 (6th Cir. 2005). Cintas' own Complaint confirms this dynamic, alleging that ImageFIRST

recruited its employees by offering substantially more attractive compensation packages, *see* DI 1, Compl. ¶¶ 6, 50, and that Cintas sought to retain employees through competing offers, *id.* ¶ 40—precisely the dynamic courts recognize as indicative of a competitive labor market. *See In re Ry. Indus. Emp. No-Poach Antitrust Litig*., 395 F. Supp. 3d 464, 475 (W.D. Pa. 2019). Thus, as made clear by ImageFIRST's (and Cintas') allegations, ImageFIRST and Cintas compete horizontally in the labor market for the same talent, notwithstanding any lack of competition for customers.

### 2. Cintas Does Not Otherwise Challenge the Sufficiency of ImageFIRST's Pennsylvania Unfair Competition Claim.

Cintas' sole challenge to ImageFIRST's Pennsylvania common law unfair competition claim is that the parties are not competitors. As demonstrated above, that argument fails because the parties indisputably compete for labor. Cintas does not otherwise challenge the sufficiency of ImageFIRST's allegations, nor could it, as ImageFIRST's Counterclaims allege conduct—including threatening letters, intimidation of former employees, meritless arbitration proceedings, misrepresentation of the enforceability of restrictive covenants, and imposition of unduly broad non-disclosure covenants—that falls squarely within the recognized scope of the Pennsylvania common law tort of unfair competition. *See*, *e.g.*, *Synthes (U.S.A.) v. Globus Med., Inc.,* 2005 WL 2233441, at *8–9 (E.D. Pa. Sept. 14, 2005); DI 68, Counterclaims ¶¶ 129–136. Accordingly, Cintas' motion to dismiss this claim should be denied.

## F. ImageFIRST Is Entitled to Seek Its Attorneys' Fees Incurred in Responding to Cintas' Bad Faith Trade Secret Claims.

Both the DTSA and PUTSA authorize a court to award reasonable attorney's fees to the prevailing party where a claim of misappropriation is made in bad faith. *See* 18 U.S.C. § 1836(b)(3)(D); 12 PA. C.S.A. § 5305(1). ImageFIRST acknowledges that the predominant practice in this District is to seek DTSA and PUTSA attorneys' fees by post-judgment motion under Rule 54(d)(2) rather than as independent counterclaims. *See Ozburn-Hessey Logistics, LLC*

*v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 456 (E.D. Pa. 2014); *N.J. Deer Control, LLC v. En Garde Deer Defense, LLC*, No. 24-5587, 2025 WL 216318, at *3 (D.N.J. Jan. 16, 2026). To the extent the Court concludes that Counts V and VI must therefore be dismissed as independent counterclaims, ImageFIRST respectfully requests that such dismissal be expressly without prejudice to ImageFIRST's right to move for attorneys' fees pursuant to Rule 54(d)(2) upon prevailing in this action. *See*, *e.g.*, *Ozburn-Hessey Logistics, LLC*, 40 F. Supp. 3d at 456 ("The dismissal is without prejudice to defendants' right to move for attorneys' fees pursuant to Fed. R. Civ. P. 54.").

Cintas' additional argument—that the Court's denial of ImageFIRST's motion to dismiss Cintas' complaint establishes that Cintas' trade secret claims cannot be "objectively specious" for purposes of DTSA bad faith—conflates two categorically distinct legal standards. The Rule 12(b)(6) standard asks only whether Cintas' allegations are facially plausible—*i.e.*, whether, taken as true, they "raise a reasonable expectation that discovery will reveal evidence" of misconduct. *Twombly*, 550 U.S. at 556. The DTSA and PUTSA bad-faith standard considers whether Cintas' claims are "objectively specious" at the time they were filed, a merits-stage inquiry that depends on what Cintas actually knew before filing. A claim can survive a 12(b)(6) motion—because it is not facially implausible—and still be proven objectively specious at the merits stage when discovery reveals Cintas had no factual basis for its claims. ImageFIRST should be permitted to pursue this theory through a Rule 54 motion after prevailing on the merits.

Regardless of the procedural vehicle, ImageFIRST has adequately pleaded Cintas' bad faith.[3] The question of whether Cintas exhibited bad faith is a fact-intensive inquiry that is

[3] *See, e.g.*, *Ruby Slipper Cafe, LLC v. Belou*, CV 18-1548, 2019 WL 1254897, at *13 (E.D. La. Mar. 19, 2019) (denying motion to dismiss and permitting defendants to maintain independent claims for attorneys' fees under the DTSA and state law statute); *Wyndham Vacation Resorts, Inc.*

premature at the pleadings stage. *See Peek v. Whittaker*, No. 13-1188, 2014 WL 2154965, at *8 (W.D. Pa. May 22, 2014). Examining bad faith requires a fact-intensive review following discovery, including whether Cintas lacked evidence to support its claims, direct evidence of Cintas' knowledge before filing suit, and circumstantial evidence such as conduct during litigation. *See Krafft v. Downey,* 68 A.3d 329, 336–37 (Pa. Super. Ct. 2013). Accordingly, Cintas' request for dismissal with prejudice should be denied.

**G. Dismissal With Prejudice Would Be Improper.**

Cintas asks the Court to dismiss ImageFIRST's Counterclaims with prejudice, arguing amendment would be futile. DI 84-1, Mot. at 19–20. In the Third Circuit, dismissal with prejudice is appropriate only where amendment would be "inequitable or futile." *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir. 2002). Cintas' futility argument rests primarily on *Noerr-Pennington*, but the majority of ImageFIRST's allegations are based on non-petitioning commercial conduct that *Noerr-Pennington* does not reach, and the sham exception presents a fact-intensive inquiry that cannot be resolved at the pleading stage. Cintas' remaining arguments are likewise fact-bound questions that do not establish futility as a matter of law. This will be ImageFIRST's first opportunity to amend, and there has been no undue delay or prejudice. Should the Court identify any pleading deficiency, ImageFIRST should be afforded leave to amend.

---

*v. Wesley Fin. Grp., LLC*, 3:12-CV-559, 2013 WL 785938, at *12 (M.D. Tenn. Feb. 28, 2013) (same where court wished to refrain until merits of the claim had been decided); *Greif, Inc. v. MacDonald*, CIVA 3:06CV312 H, 2007 WL 679040, at *4 (W.D. Ky. Mar. 1, 2007) (same, finding that "[t]here is some precedent in other jurisdictions for attorney's fees as a counterclaim under the Uniform Trade Secrets Act." (citation omitted)); *Andrew Corp. v. Van Doren Indus., Inc.*, CIV. A. 88-2414-O, 1990 WL 136779, at *5 (D. Kan. July 5, 1990) (deciding attorneys' fees counterclaim under Kansas trade secrets statute on summary judgment).

## V. CONCLUSION

For the foregoing reasons, ImageFIRST respectfully requests that the Court deny Cintas' Motion in its entirety. If the Court nevertheless concludes that any claim is insufficiently pleaded, ImageFIRST respectfully requests that such claim be dismissed without prejudice and with leave to amend, or with leave to seek attorneys' fees through motion practice.

Dated: August 19, 2026

Respectfully submitted,

**BAKER & MCKENZIE LLP**

/s/ *Robin Samuel*
Robin Samuel (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Tel: 310 201 4728
Fax: 310 201 4721
Email: robin.samuel@bakermckenzie.com

William Dugan (admitted *pro hac vice*)
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Tel: 312 861 8000
Fax: 312 861 2899
Email: william.dugan@bakermckenzie.com

Allen Al-Haj (admitted *pro hac vice*)
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Tel: 214 978 3000
Fax: 214 978 3099
Email: allen.alhaj@bakermckenzie.com

**WILENTZ GOLDMAN & SPITZER, P.A.**

Daniel S. Bernheim, 3d
Two Penn Center, Suite 910
Philadelphia, PA 19102
Tel: 215 636 4468
Email: dbernheim@wilentz.com

*Attorneys for Defendant/Counterclaimant*
*ImageFIRST Healthcare Laundry Specialists, LLC*

**CERTIFICATE OF SERVICE**

I, Robin Samuel, Esq., hereby certify that on August 19, 2026, I caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF System upon the following:

Stephen R. Chuk, Esquire
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W
Suite 600 South
Washington, DC 20004
*schuk@proskauer.com*

Gregory Knopp, Esquire
Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
gknopp@proskauer.com

Emily Kline, Esquire
David Fioccola, Esquire
Craig B. Whitney, Esquire
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
*dfioccola@proskauer.com*; *cwhitney@proskauer.com*
*ekline@proskauer.com*

**BAKER & MCKENZIE LLP**

/s/ *Robin Samuel*
Robin Samuel (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Tel: 310 201 4728
Fax: 310 201 4721
Email: robin.samuel@bakermckenzie.com