**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CINTAS CORPORATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS, LLC,**<br><br>**Defendant.** | Civ. A. No. 2:26-cv-00302-JFM |

**PLAINTIFF CINTAS CORPORATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS DEFENDANT IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS, LLC'S COUNTERCLAIMS**

# TABLE OF CONTENTS


I. IMAGEFIRST'S UNFAIR COMPETITION CLAIMS FAIL. .......... 1

A. *Noerr-Pennington* Bars ImageFIRST's Claims. .......... 2

B. ImageFIRST's Sham Petitioning Argument Is Contradictory And Baseless. .......... 3

C. Cintas's *Noerr-Pennington* Defense Is Properly Resolved As A Matter Of Law. .......... 5

D. ImageFIRST's Theory Improperly Requires Reexamination Of Arbitrable Proceedings .......... 5

E. The Remaining State-Law Claims Independently Fail. .......... 6

1. The California Law Claims Fail to Allege Harm to Competition. .......... 6

2. ImageFIRST Also Lacks Standing to Assert Its UCL Claims. .......... 7

3. The Massachusetts Unfair Competition Claim Must Be Dismissed. .......... 8

4. The Pennsylvania Unfair Competition Claim Must Be Dismissed. .......... 9

II. IMAGEFIRST CONCEDES THAT ITS DTSA AND PUTSA CLAIMS SHOULD BE DISMISSED. .......... 10

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
263 F.3d 239 (3d Cir. 2001)....................5

*Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*,
185 F.3d 154 (3d Cir. 1999)....................5

*BE & K Constr. Co. v. N.L.R.B.*,
536 U.S. 516 (2002)....................2

*Fishman Transducers, Inc. v. Paul*,
684 F.3d 187 (1st Cir. 2012)....................9

*Ford Motor Co. v. Nat'l Indem. Co.*,
972 F. Supp. 2d 862 (E.D. Va. 2013)....................6

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
806 F.3d 162 (3d Cir. 2015)....................3

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011)....................8

*McGuire Oil Co. v. Mapco, Inc.*,
958 F.2d 1552 (11th Cir. 1992)....................2

*Montway LLC v. Navi Transp. Servs. LLC*,
826 F. Supp. 3d 532 (D. Del. 2026)....................3

*NovelPoster v. Javitch Canfield Grp.*,
No. 13-CV-05186, 2014 WL 5687344 (N.D. Cal. Nov. 4, 2014)....................8

*Olson v. World Fin. Grp. Ins. Agency, LLC*,
No. 24-CV-00477, 2024 WL 3498572 (N.D. Cal. July 19, 2024)....................7, 8

*Pro. Sports Servs. FI OY v. Grossman*,
770 F. Supp. 3d 394 (D. Mass. 2025)....................9

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
655 F. App'x 103 (3d Cir. 2016)....................2

*W. Air Charter, Inc. v. Schembari*,
No. 17-00420, 2017 WL 10638759 (C.D. Cal. Oct. 6, 2017)....................7

*W. Air Charter, Inc. v. Sojitz Corp.*,
No. 18-7361, 2019 WL 4509304 (C.D. Cal. May 2, 2019) ....................................................7

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
728 F.3d 354 (4th Cir. 2013) ....................................................................................4

**STATUTES**

Mass. Gen. Laws Chapter 93A, §§ 2, 11 ......................................................................8

ImageFIRST's Counterclaims fail as a matter of law. They are premised on repeated allegations of a nationwide "litigation campaign" in which Cintas threatened and filed litigation as "commercial extortion"–unquestionably protected petitioning activity under *Noerr-Pennington*. Faced with certain dismissal on this basis, ImageFIRST tries to recast its claims as challenges to conduct unrelated to threatened or actual litigation. But ImageFIRST cannot overcome the plain reading of its allegations based on protected activity.

Nor can ImageFIRST avoid binding precedent protecting Cintas's alleged litigation campaign by characterizing such petitioning as a sham. None of the proceedings were found meritless. In fact, the only ruling against Cintas found Cintas's claims legally and factually supportable, and this Court has rejected ImageFIRST's contention that the claims in this action were implausible. ImageFIRST, therefore, cannot manufacture a sham-litigation defense by labeling nonfrivolous proceedings as a "campaign" or by asking the Court to second-guess decisions already resolved or pending in arbitration.

ImageFIRST's remaining state-law theories independently fail. ImageFIRST does not plead injury to competition or UCL standing; does not allege conduct occurring primarily and substantially in Massachusetts, instead referring to a nationwide campaign; and does not plead the kind of competition Pennsylvania unfair competition law requires, instead conjuring for the first time an amorphous market "for labor" in which ImageFIRST and Cintas allegedly compete. And, as ImageFIRST concedes, its stand-alone DTSA and PUTSA fee claims are baseless.

## I. IMAGEFIRST'S UNFAIR COMPETITION CLAIMS FAIL.

ImageFIRST alleges that it was harmed by "Cintas' litigation campaign" (ECF No. 68 ¶ 87), through which Cintas supposedly "[u]sed the threat and filing of litigation as a tool of commercial extortion." *Id.* ¶¶ 123(b), 132(b). Cintas's opening brief demonstrated that claims resting on pre-suit demands and litigation are barred by the *Noerr-Pennington* doctrine. ECF No.

84 at 7–9. ImageFIRST now isolates selected allegations from the "campaign" and labels them as private conduct. But labels do not change the conduct alleged. The Counterclaims seek liability for lawyers' demands threatening suit, this action, and related proceedings—quintessential protected petitioning. Nor does ImageFIRST plausibly allege that any of those proceedings were a sham. Its unfair competition claims depend on that protected activity and, therefore, fail.

**A. *Noerr-Pennington* Bars ImageFIRST's Claims.**

ImageFIRST concedes that *Noerr-Pennington* reaches at least part of its claims but disputes the doctrine's scope. *See* ECF No. 89 at 6. It describes the doctrine as "limited exclusively to petitioning the government." *Id.* at 7. That formulation is too narrow. Like other First Amendment protections, the right to petition requires "breathing space." *See BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002) (citation omitted). Courts accordingly protect not only filed litigation, but threats and demands made in genuine contemplation of litigation.

ImageFIRST argues that certain unspecified communications and Cintas's cease-and-desist letters fall outside *Noerr-Pennington's* protection. Binding authority holds otherwise. *See, e.g.*, *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110 (3d Cir. 2016) (holding a cease-and desist letter was protected petitioning activity); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (finding repeated telephone threats of litigation protected).

ImageFIRST's contention that the cease-and-desist letters sent to Nellie Lunetta, Shelby Ray, and David Hilderbrand were insufficiently litigious also contradicts its own pleadings and the law. ImageFIRST itself calls those communications "cease and desist letters." ECF No. 68 ¶ 77. It alleges that Cintas "sent out lawyers' letters making heavy-handed *threats of litigation* against employees who were brave enough to leave." *Id.* ¶ 2 (emphasis added). It further alleges that outside counsel sent the letters to Lunetta and Ray (*id.* ¶¶ 62, 70) and that counsel for Lunetta and Hilderbrand responded with legal arguments concerning the employees' contractual

obligations. *Id.* ¶¶ 40, 72. This pleaded sequence confirms the letters' connection to contemplated proceedings. Indeed, the disputes involving Hilderbrand and Ray were arbitrated or settled. *Id.* ¶¶ 58, 63–65. *Noerr-Pennington* protects these litigation-related demands.

*Montway LLC v. Navi Transp. Servs. LLC*, 826 F. Supp. 3d 532, 540 (D. Del. 2026), is not to the contrary. There, one shipping company complained to a private broker so that the broker would remove a competitor from its platform; the communication neither threatened litigation nor sought to advance contemplated litigation. Here, by contrast, ImageFIRST expressly pleads "threats of litigation" by Cintas's lawyers against former employees concerning contractual breaches. ECF No. 68 ¶ 2. The recipients' status as nonparties to this action does not matter. In fact, the Third Circuit in *Sweet St.* protected a demand sent to a third party directing it to stop selling the defendant's goods. 655 F. App'x at 107–08, 110–11.[1]

**B. ImageFIRST's Sham Petitioning Argument Is Contradictory and Baseless.**

ImageFIRST alternatively invokes the pattern-of-sham-petitioning exception. *See* ECF No. 89 at 9. That exception applies only when a series of petitions was pursued "without regard to merit" to use governmental process to injure a market rival and restrain trade. *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180–81 (3d Cir. 2015). The inquiry is "holistic" and the petitioner's record of success may bear on subjective intent. *Id.*

As an initial matter, ImageFIRST's theory is facially contradictory. It treats cease-and-desist letters and private arbitrations as commercial conduct outside *Noerr-Pennington* when

[1] ImageFIRST appears to allege that other purported Cintas communications with its former employees are not protected by *Noerr-Pennington* (ECF No. 89 at 7) but provides no detail regarding these communications. ImageFIRST does not identify who sent or received these communications, when they occurred, their details, or even their general nature. ImageFIRST cites three paragraphs to support its assertion that Cintas directed communications to its employees. *See id.* at 7 (citing ECF No. 68 ¶¶ 3, 68, 84). None of these paragraphs references any communications, other than a metaphorical "message Cintas has sent" to its employees. *Id.* ¶ 84.

arguing the doctrine's scope yet counts the same conduct as petitioning when asserting a pattern of sham proceedings. *See* ECF No. 89 at 9–10.

Regardless, even considering the entire course of Cintas's alleged conduct, the purported outcomes do not support sham petitioning. The Ray dispute ended in a negotiated settlement, not an adjudication that Cintas's position lacked merit. ECF No. 68, ¶¶ 61, 63, 64–65. The Zuidema matter ended with Zuidema's sworn commitment not to violate his employment agreement with Cintas. *Id.* ¶¶ 53–57. The Brosnan arbitration remains pending and thus supplies no adverse merits determination. The *Hilderbrand* arbitrator denied Cintas's claims but found them "neither entirely unjustifiable nor successfully interfering" and declined sanctions because they rested on recognized legal theories and were not devoid of factual or legal foundation. Knopp Decl. Ex. B. at 6. Most significantly, this Court denied ImageFIRST's motion to dismiss this action, observing there was "something to be said for what the Plaintiffs have basically presented here," including allegations that numerous employees emailed themselves commercially sensitive information before joining ImageFIRST. May 19, 2026 Hearing Tr. 274:3–7 ("There are many individuals. There is a lot of information that's said to be trade secrets or commercially important information that these employees are emailing themselves. There's a lot of hiring going on.")

Thus, among the proceedings ImageFIRST identifies, only one has produced a final adverse ruling—and that decision expressly rejected the assertion that Cintas's claims were baseless. The other matters settled, remain pending, or produced relief consistent with enforcement of Cintas's agreements. The record bears no resemblance to the one-success-in-fourteen pattern in *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 365 (4th Cir. 2013) (finding a pattern of sham petitioning where only one of fourteen

proceedings was successful with ten withdrawn "under suspicious circumstances").[2] In short, ImageFIRST has not plausibly alleged a series of petitions pursued without merit.

### C. Cintas's *Noerr-Pennington* Defense Is Properly Resolved as a Matter of Law.

ImageFIRST next asserts that *Noerr-Pennington* is an affirmative defense that cannot be decided on a motion to dismiss. *See* ECF No. 89 at 11–12. But this Circuit regularly affirms the dismissal of claims based on *Noerr-Pennington* when the defense appears on the face of the pleadings and incorporated materials. *See, e.g.*, *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 254 (3d Cir. 2001) (affirming dismissal on a motion to dismiss based on *Noerr-Pennington*); *Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*, 185 F.3d 154, 160 (3d Cir. 1999) (affirming *Noerr-Pennington* dismissal and rejecting sham petitioning defense).

No discovery is needed to apply that rule here. The Counterclaims characterize the challenged course of conduct as a "litigation campaign" (ECF No. 68 ¶ 87), identify the cease-and-desist letters and proceedings that comprise it, and describe their outcomes. *Id.* ¶¶ 2–3, 50–51, 77. The Hilderbrand award and this Court's ruling clearly are not disputed factual allegations requiring discovery. Because ImageFIRST's own pleading and incorporated materials both establish the protected nature of the conduct and foreclose the sham exception, dismissal is appropriate.

### D. ImageFIRST's Theory Improperly Requires Reexamination of Arbitrable Proceedings.

Cintas's opening brief also demonstrated that ImageFIRST's theory is an improper end-run around matters committed to arbitration or resolved by the parties to those proceedings. ECF No. 84 at 9–11. ImageFIRST blithely denies this (ECF No. 89 at 12–13) but never explains how

[2] ImageFIRST also asserts that "Cintas concedes it filed suit without evidence to support its misappropriation claims," citing to (ECF No. 68 ¶¶ 78–79). ECF No. 89 at 9. This assertion is baseless and, as with other portions of its Opposition, unsupported by the cited paragraphs.

the Court could deem Cintas's pursuit of those proceedings wrongful without reassessing the merits of the disputes in arbitration and thereby invading the province of the arbitrators. As to Hilderbrand, ImageFIRST asks this Court to adopt the very premise the arbitrator rejected—that Cintas pursued an unjustifiable claim. As to Brosnan, its theory would require a federal court to pass on the propriety of claims currently before the arbitrator. And as to Ray and Zuidema, ImageFIRST seeks to essentially reopen resolved disputes as predicates for its own damages claim.

ImageFIRST ignores the authorities cited in Cintas's opening brief requiring respect for the parties' agreement to arbitrate, barring a nonparty from attacking settlements, and foreclosing re-litigation of the Hilderbrand arbitrator's determination. ECF No. 84 at 9–11. And its reliance on *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 862, 868–69 (E.D. Va. 2013) is misplaced. *Ford Motor Company* held only that initiating a single private arbitration was not protected petitioning under *Noerr-Pennington.* It did not authorize a nonparty to seek damages by asking a court to condemn multiple pending or resolved arbitrable proceedings.

**E. The Remaining State-Law Claims Independently Fail.**

**1. The California Law Claims Fail to Allege Harm to Competition.**

ImageFIRST concedes that a UCL claim under the "unfair" prong must allege harm to competition. ECF No. 89 at 18. It responds that Count I—captioned "Unfair Business Practices" and expressly framed in terms of an "unfair business practice"—is not actually a claim under the "unfair" prong but rather invokes the "unlawful" prong, which purportedly does not require harm to competition. *Id.* Whatever label ImageFIRST now prefers, the claim fails. As an "unfair" claim, it does not plead harm to competition. As an "unlawful" claim, it depends on the same protected litigation conduct and the same contracts to which ImageFIRST is not a party. ImageFIRST cannot cure those defects by recasting the count in its opposition brief.

ImageFIRST's new "labor-market" theory does not fill the gap. Its opposition brief asserts that Cintas "suppresses labor-market mobility industry-wide—harming not just one competitor but competition for talent across the entire healthcare laundry sector." ECF No. 89 at 18. The Counterclaims, however, identify no relevant labor market, no market-wide restraint, no effect on wages or mobility, and no employer harmed other than ImageFIRST. General allegations that Cintas sought to prevent ImageFIRST from hiring Cintas employees (ECF No. 68 ¶¶ 6, 28) describe harm to a single competitor, not harm to the competitive process. *See W. Air Charter, Inc. v. Sojitz Corp.*, No. 18-7361, 2019 WL 4509304, at *14 (C.D. Cal. May 2, 2019) (dismissing UCL claim because "Plaintiff's complaint does not detail how Defendants' acts harm competition but rather focus on harm to [Plaintiff] as a competitor, thus failing under the unfair prong").

**2. ImageFIRST Also Lacks Standing to Assert Its UCL Claims.**

Count I alleges that Cintas threatened or pursued claims against California-based former employees and improperly included restrictive covenants in its agreements with those employees. ECF No. 68 ¶¶ 31-36. *Noerr-Pennington* bars the litigation-based claims, as discussed above.

The remaining theory rests on provisions in contracts between Cintas and third parties. But a competitor lacks standing to sue "based solely on provisions in contracts to which it is not a party." *Olson v. World Fin. Grp. Ins. Agency, LLC*, No. 24-CV-00477, 2024 WL 3498572, at *5 (N.D. Cal. July 19, 2024); *see also W. Air Charter, Inc. v. Schembari*, No. 17-00420, 2017 WL 10638759 at *9 (C.D. Cal. Oct. 6, 2017) (dismissing counterclaims similar to ImageFIRST's); *NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-05186, 2014 WL 5687344, at *6 (N.D. Cal. Nov. 4, 2014) (dismissing UCL claim where claim was "squarely based on a contractual relationship to which counterclaimants have not alleged they were a party"). ImageFIRST made no attempt to distinguish *W. Air Charter* or *NovelPoster*, both of which foreclose a UCL claim based on third-party contractual relationships.

ImageFIRST invokes *Olson* because it permitted a theory based on "wrongful threats" independent of the challenged contracts. 2024 WL 3498572, at *6. But *Olson* did not address *Noerr-Pennington*, and ImageFIRST pleads no comparable, factually specified threat independent of Cintas's lawyers' litigation demands. Once the protected demands are set aside, there is no actionable conduct to support this claim.

ImageFIRST similarly lacks standing to bring UCL "unlawful" claims (Count II). ImageFIRST devotes much of its response to arguing that Cintas's restrictive covenants violate California law. ECF No. 89 at 13–16. But that argument does not answer Cintas's standing challenge, which concerns the undisputed fact that ImageFIRST is not a party to those agreements.

ImageFIRST instead identifies three supposed injuries that purportedly establish standing: costs incurred in responding to the November 2025 demand to Lunetta, unspecified prospective employees allegedly "chilled" from joining ImageFIRST, and the asserted loss of Lunetta's California customer relationships. ECF No. 89 at 16. The first arises solely from protected litigation-related conduct, not from an independently actionable practice. The second identifies no employee who declined to join ImageFIRST and no lost money or property. The third fails to allege what relationship was lost, what cognizable property interest ImageFIRST held in it, or how Cintas's supposedly frivolous demand caused the loss. These conclusory allegations do not plausibly plead lost money or property caused by an actional anti-competitive practice. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321 (2011) (requiring that a party "lost money or property as a result of the defendant's unfair business practices.") (citation omitted).

### 3. The Massachusetts Unfair Competition Claim Must Be Dismissed.

ImageFIRST cannot satisfy Chapter 93A's requirement that the conduct at issue occur "primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, §§ 2, 11. Its opposition points to Brosnan's Massachusetts residence and work, his Massachusetts employment

agreement, an asserted "Massachusetts arbitration proceeding" against Brosnan, and disruption of ImageFIRST's "Massachusetts-based operations." ECF No. 89 at 19. But the Counterclaims do not allege that the arbitration occurred in Massachusetts, and they allege disruption only to ImageFIRST's broader "Northeast sales operations." ECF No. 68 ¶ 123(d). Nor do they allege that Cintas formulated or directed the challenged course of conduct in Massachusetts, that ImageFIRST received the challenged communication there, or that ImageFIRST suffered a specifically identified loss there. A Massachusetts employee's involvement does not make Massachusetts the center of gravity of the alleged wrongdoing. *Pro. Sports Servs. FI OY v. Grossman*, 770 F. Supp. 3d 394, 399 (D. Mass. 2025) (granting motion to dismiss Chapter 93A claim where a Massachusetts resident transferred assets from a New York company to his Massachusetts company).

The Counterclaims instead describe a nationwide campaign spanning California, Illinois, Pennsylvania, New Jersey, and South Dakota. ECF No. 68 ¶¶ 31–48. ImageFIRST cannot plead a diffuse national course of conduct and then transform it through briefing into conduct occurring primarily and substantially in Massachusetts. *See Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012) (affirming dismissal because "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement . . . cannot be satisfied").

**4. The Pennsylvania Unfair Competition Claim Must Be Dismissed.**

Cintas's opening brief showed that, in addition to violating *Noerr-Pennington*, ImageFIRST's Pennsylvania Unfair Competition claim fails because ImageFIRST disclaimed competition between Cintas and ImageFIRST. ECF No. 84 at 16. In fact, ImageFIRST has repeatedly asserted to this Court that Cintas and ImageFIRST are not competitors. *See* ECF No. 25-1 at 12; ECF No. 68 ¶¶ 18, 21, 33; 83(d). ImageFIRST now claims—for the first time—that

the parties compete for labor but not "for customers." ECF No. 89 at 21–22. But, as noted above, the Counterclaims do not define a shared labor market, identify a common pool of unique employees, or allege facts showing competition or harm in that market. And although ImageFIRST cites federal antitrust decisions to argue that, in some contexts, "labor" might be a relevant market, the cases do not hold that generalized efforts to recruit another company's employees satisfy the distinct competition requirement for a Pennsylvania common-law unfair-competition claim.

## II. IMAGEFIRST CONCEDES THAT ITS DTSA AND PUTSA CLAIMS SHOULD BE DISMISSED.

"ImageFIRST acknowledges that the predominant practice in this District is to seek DTSA and PUTSA attorneys' fees by post-judgment motion." ECF No. 89 at 22. More than the predominant practice, as Cintas demonstrated in its opening brief, it is the law. ECF No. 84 at 18–19. These claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Cintas's motion and dismiss ImageFIRST's Counterclaims with prejudice. The legal deficiencies in ImageFIRST's Counterclaims cannot be cured with discovery or amendment. ECF No. 84 at 19–20.

Dated: September 9, 2026

/s/ *David Fioccola*
David Fioccola (*pro hac vice*)
Craig Whitney (*pro hac vice*)
Emily Kline (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dfioccola@proskauer.com
cwhitney@proskauer.com
ekline@proskauer.com

Stephen R. Chuk
PROSKAUER ROSE LLP
10001 Pennsylvania Ave NW
Suite 600 South
Washington, DC 20004
(202) 416-6800
schuk@proskauer.com

Gregory Knopp (*pro hac vice*)
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
(310) 557-2900
gknopp@proskauer.com

*Attorneys for Cintas Corporation*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Plaintiff Cintas Corporation's Reply in Further Support of its Motion to Dismiss Defendant ImageFIRST Healthcare Laundry Specialists, LLC's Counterclaims was electronically filed on this 9th day of September, 2026 through the CM/ECF system, which will send a notification of such filing to all counsel of record.

**PROSKAUER ROSE LLP**

/s/ *David Fioccola*
David Fioccola (*admitted pro hac vice*)
Craig Whitney (*admitted pro hac vice*)
Emily Kline (*admitted pro hac vice*)
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
Tel: 212 969 3000
Email: dfioccola@proskauer.com
Email: cwhitney@proskauer.com
Email: ekline@proskauer.com

Gregory Knopp (*admitted pro hac vice*)
Proskauer Rose LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
Tel: 310 557 2900
Email: gknopp@proskauer.com

Stephen R. Chuk
10001 Pennsylvania Ave NW
Suite 600 South
Washington, DC 20004
Tel: 202 416 6800
Email: schuk@proskauer.com

*Attorneys for Cintas Corporation*