**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CINTAS CORPORATION** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-302** |
| | : | |
| **IMAGEFIRST HEALTHCARE** | : | |
| **LAUNDRY SPECIALISTS, LLC** | : | |

# MEMORANDUM

**MURPHY, J.** **October 27, 2026**

ImageFIRST Healthcare Laundry Specialists and the Cintas Corporation agree that ImageFIRST hired some employees away from Cintas. They disagree about basically everything else. According to Cintas, ImageFIRST is engaged in an unlawful poaching scheme to steal Cintas's employees, trade secrets, and customers. According to ImageFIRST, Cintas is pursuing a campaign of sham legal proceedings aimed at unlawfully restraining employee mobility and suppressing lawful competition. Time will tell who (if anyone) is correct. At the moment, we consider Cintas's motion to dismiss ImageFIRST's counterclaims, where we accept ImageFIRST's version of the facts and see if the pleadings plausibly suggest it is entitled to relief.

We conclude that ImageFIRST has plausibly pleaded some but not all of its counterclaims. ImageFIRST's two claims under California's Unfair Competition Law are duplicative, so we will dismiss one. We will also dismiss ImageFIRST's counterclaim for unfair competition under Pennsylvania common law because ImageFIRST does not allege it competes with Cintas for customers. Finally, we dismiss ImageFIRST's claims for attorneys' fees under the Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act because this relief should be pursued, if at all, by motion rather than by counterclaim. Cintas's arguments in

favor of dismissing the remaining counterclaims are premature or otherwise fail to persuade, so we will deny the motion in part.

## I. BACKGROUND[1]

ImageFIRST Healthcare Laundry Specialists, LLC is a business focused primarily on providing and laundering linen textiles for healthcare facilities across the United States. DI 68, Countercls. ¶ 14. The Cintas Corporation provides uniform rentals, facility maintenance products, and fire protection services to a variety of industries. *Id.* ¶ 13. Cintas generally requires its sales, operations, and management employees to sign restrictive covenants as part of their employment agreements. *Id.* ¶ 80. These covenants prohibit Cintas employees from working for competitors for a specified period, soliciting Cintas customers or employees, or disclosing "Confidential and Material Information." *Id.* ¶ 81.

In 2024 and 2025, ImageFIRST hired five people who had previously worked for Cintas — David Hilderbrand and Shelby Ray of Illinois, Nellie Lunetta of California, Mikael Zuidema of South Dakota, and Brian Brosnan of Massachusetts (the former employees). *See* DI 68, Countercls. ¶¶ 31, 37-38, 47, 53-54, 61, 66, 69. Each of these employees had signed employment agreements under their respective states' laws; each agreement contained a restrictive covenant. *Id.* Cintas commenced arbitrations against Messrs. Hilderbrand, Brosnan, and Zuidema and Ms. Ray shortly after their respective hirings by ImageFIRST. *Id.* ¶¶ 55, 63, 67. It alleged that the former employees violated their restrictive covenants, breached their contracts, and/or misappropriated Cintas's trade secrets. *Id.* ¶¶ 55, 63, 67. Cintas lost the arbitration against Mr. Hilderbrand and voluntarily dismissed those against Ms. Ray and Mr.

[1] Unless otherwise noted, we draw the facts from ImageFIRST's counterclaims (DI 68), whose allegations we take as true at this stage.

Zuidema. *Id.* ¶¶ 57, 58-60, 64. Mr. Brosnan's arbitration is still pending. DI 84-1 at 12; *see* DI 68, Countercls. ¶ 67. Cintas also demoted Mr. Brosnan's wife — a fifteen-year Cintas employee — while she was on maternity leave "because of her husband." DI 68, Countercls. ¶ 68. It then fired her when she hired an attorney to contest the demotion. *Id.* Finally, Cintas also sent a cease-and-desist letter to the fifth employee, Nellie Lunetta. *Id.* ¶ 70. That letter demanded that Ms. Lunetta comply with the restrictive covenant in her employment agreement, which Cintas asserted prohibited her from soliciting Cintas's customers and employees. *Id.*

In addition to pursuing or threatening legal actions against the individual employees, Cintas also brought the present action against ImageFIRST. *Id.* ¶ 73; DI 1. Cintas alleges that ImageFIRST, with the help of Mr. Hilderbrand, "has initiated a systematic plan to recruit and hire Cintas's key employees nationwide." DI 1 ¶ 3. The scheme, according to Cintas, involves ImageFIRST inducing Cintas employees to violate their obligations under their restrictive covenants, confidentiality agreements, and the duty of loyalty and misappropriating Cintas's trade secrets. *See id.* ¶¶ 68-69, 98, 110, 120, 142, 152. Cintas seeks (1) a declaratory judgment that the employment and confidentiality agreements between it and departing employees are valid and enforceable, (2) various forms of injunctive relief to put a stop to ImageFIRST's alleged scheme, and (3) several forms of monetary damages. *Id.* at 37-39.[2]

Cintas moved for a preliminary injunction (DI 27) while ImageFIRST moved to dismiss (DI 25). We denied both motions, finding that Cintas had stated a claim but could not establish irreparable harm necessary for the preliminary injunction. *See* DI 54. ImageFIRST then

[2] We adopt the sequential pagination of the CM/ECF docketing system.

answered Cintas's complaint and filed the six counterclaims at issue in this motion: (I) Unfair Business Practices under California's Unfair Competition Law (UCL), (II) Unlawful Business Practice under the California UCL, (III) a violation of Massachusetts General Laws Chapter 93A, (IV) Unfair Competition under Pennsylvania common law, (V) Bad Faith Misappropriation under the Federal Defend Trade Secrets Act, and (VI) Bad Faith Misappropriation under the Pennsylvania Uniform Trade Secrets Act. DI 68 at 90-104.

## II. MOTION AT ISSUE

Cintas moves to dismiss ImageFIRST's counterclaims. It argues that all of the counterclaims are barred under the *Noerr-Pennington* doctrine because they target protected litigation conduct. DI 84-1 at 14-16. It further argues that the claims are also barred across the board by the Federal Arbitration Act (FAA) because they would require the court to review the merits of Cintas's arbitration claims against Messrs. Hilderbrand, Zuidema, and Brosnan and Ms. Ray. *Id.* at 17. Cintas also argues that the state law unfair competition counterclaims (Counterclaims I-IV) must be dismissed on the merits. *Id.* at 18-25. Finally, it argues that the misappropriation counterclaims may be pursued (Counterclaims V-VI), if at all, by motion and not as independent counterclaims. *Id.* at 25-26.

ImageFIRST does not dispute that the misappropriation counterclaims should be pursued by motion rather than as independent claims (DI 89 at 29-30), but otherwise opposes Cintas's motion, *see generally id.* ImageFIRST argues that Cintas's alleged conduct is not sufficiently related to government petitioning to be protected by the *Noerr–Pennington* doctrine, and that even if it were, it would fall into the "sham litigation" exception. DI 89 at 14-19. ImageFIRST contends that the FAA does not bar its claims because they do not seek to challenge the result of

any arbitration but rather to use facts about the arbitrations as evidence for its claims. *Id.* at 19-20. Finally, ImageFIRST disputes that it has failed to state a claim on the merits for any of its state law unfair competition claims. *Id.* at 20-29.

## III. LEGAL STANDARDS

We review "a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint." *Lento v. Altman*, 2025 WL 914306, at *2 (3d Cir. Mar. 26, 2025) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)). In evaluating a motion to dismiss a complaint, we first disregard any conclusory allegations such as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "naked assertions devoid of further factual enhancement." *Santiago v. Warminster Twp.,* 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). We then evaluate whether, drawing all reasonable inferences in the plaintiff's favor, the remaining well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 679). We will grant a motion to dismiss based on an affirmative defense only when the defense is "apparent from the face" of the counterclaims. *See Chaudhari v. Parker*, 2022 WL 3025478, at *2 (3d Cir. Aug. 1, 2022) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)).

## IV. DISCUSSION

### A. *Noerr-Pennington* does not bar ImageFIRST's counterclaims.

"*Noerr-Pennington* immunity" draws its name from two Supreme Court cases — *E.R.R. Presidents Conf. v. Noerr Motor Freight*, Inc., 365 U.S. 127 (1961) and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). In those cases, the Court held that the Sherman Act did

not impose liability for attempts to influence public officials, even where such conduct was anticompetitive; the Court's rationale was that construing the Act to prohibit such conduct could cause a conflict between the Act and the First Amendment right to petition the government. *See Noerr*, 365 U.S. at 137-38; *Pennington*, 381 U.S. at 669-71. Over time, "*Noerr-Pennington*" has come to refer not only to a doctrine of statutory interpretation but also to serve as a "'label for a form of First Amendment protection' grounded in the Petition Clause." *Montway LLC v. Navi Transport Services LLC*, 826 F. Supp. 3d 532, 539 (D. Del. 2026) (quoting *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)). In other words, outside the statutory interpretation context, to assert *Noerr-Pennington* immunity is to assert a First Amendment Petition Clause defense. *See We, Inc. v. City of Philadelphia*, 174 F.3d 322, 327-28 (3d Cir. 1999). Accordingly, *Noerr-Pennington*, as relevant here, is an affirmative defense that can support a motion to dismiss only if it is "apparent from the face" of ImageFIRST's counterclaims. *See Chaudhari*, 2022 WL 3025478, at *2.

The Petition Clause provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for redress of grievances." U.S. Const. Amend. I. The Fourteenth Amendment incorporates this right as against state governments. *San Filippo v. Bongiovanni*, 30 F.3d 424, 442 (3d Cir. 1994), *abrogated on other grounds by Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011). The Petition Clause/*Noerr-Pennington* "provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015). Thus, state law may not impose

liability for appealing "to courts and other forums established by the government for resolution of legal disputes." *Guarnieri*, 564 U.S. at 387.

Like most constitutional rights, the right to petition is not absolute. For example, the right to petition does not include the right to file "sham" litigation. *Hanover 3201 Realty*, 806 F.3d at 178. Under the sham litigation exception, when "a series of petitions were filed with or without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process) to harm a market rival and restrain trade," then there is no *Noerr-Pennington*/Petition Clause immunity. *Id.* at 180. This inquiry involves a "holistic review that may include looking at the defendant's filing success — i.e., win-loss percentage — as circumstantial evidence of the defendant's subjective motivations," *id.*, and is thus necessarily fact-intensive and ill-suited for resolution at the pleading stage.

With these principles in mind, we conclude that *Noerr-Pennington* does not require dismissal because the defense is not apparent from the face of ImageFIRST's counterclaims. Even assuming that the counterclaims are predicated on protected petitioning conduct, the sham litigation exception is plausibly applicable — or at least not apparently inapplicable. ImageFIRST alleges that Cintas filed a series of arbitrations in which it failed to prevail, that it sent baseless cease-and-desist letters, and that it meritlessly sought preliminary relief in this suit. DI 68, Countercls. ¶¶ 50-52, 74-78. Drawing all reasonable inferences in ImageFIRST's favor, as we must, it is not apparent from the face of the counterclaims that this conduct had a legitimate petitioning purpose rather than the purpose of harming ImageFIRST and restraining trade. Accordingly, we decline to grant Cintas's motion to dismiss on *Noerr-Pennington* grounds.

**B. The Federal Arbitration Act does not bar ImageFIRST's counterclaims.**

The FAA requires that courts honor agreements to arbitrate and provides for narrow judicial review of arbitrators' decisions. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 108 (2019); *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1055-56 (3d Cir. 1991). Cintas argues that the FAA bars all of ImageFIRST's counterclaims because they "ask[] this Court to decide the merits of claims *in arbitration* and determine whether, by invoking its contractual right to assert those claims, Cintas engaged in unfair competition." DI 84-1 at 16. But ImageFIRST does not ask us to review any arbitration decision or issue a ruling on the claims Cintas brought in those arbitrations. Rather, ImageFIRST points to the existence and results of the arbitrations as factual support for its theory that Cintas is engaging in a course of unfair competition. *See, e.g.*, DI 68 ¶ 83(a)-(d). Cintas has not persuaded us that the FAA precludes courts from considering facts about arbitrations insofar as they might be relevant to other distinct claims.

**C. ImageFIRST adequately pleads a claim under California's Unfair Competition Law, but its two claims under this statute are duplicative.**

California Business and Professions Code § 17200 *et seq.* ("Unfair Competition Law" or "UCL") provides a cause of action to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." UCL § 17204. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice . . . ." *Id.* § 17200. ImageFIRST brings two counterclaims under the UCL, alleging that Cintas has engaged in "unfair" (Count I) and "unlawful" (Count II) conduct. We address each claim in turn.

***"Unfair" claim (Count I).*** We will dismiss ImageFIRST's "unfair" claim as duplicative of its "unlawful" claim. *See Pressley v. USAA Gen. Indem. Co.*, 2025 WL 1797245, at *2 n.3

(E.D. Pa. June 30, 2025). For conduct to be "unfair" under the UCL, it must "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition." *Cel-Tech Commun., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Cintas argues that ImageFIRST's counterclaims do not meet this standard. DI 84-1 at 20-21. ImageFIRST counters that the standard does not apply because the "unfair" claim is actually based on the same "unlawful" conduct alleged in both Counts I and II. DI 89 at 25. That is essentially a concession that the "unfair" claim is duplicative of the "unlawful" claim brought under the same provision of the UCL. We will accordingly dismiss the "unfair" claim.

***"Unlawful" claim (Count II).*** We will deny Cintas's motion to dismiss ImageFIRST's "unlawful" UCL claim. To state a UCL "unlawful" claim, ImageFIRST must allege (1) "unlawful" conduct that (2) caused "injury in fact" and "lost money or property." *See* UCL §§ 17200, 17204.

The first element is satisfied by ImageFIRST's allegation that Cintas required California-based employees to sign employment contracts containing restrictive covenants that included non-solicitation provisions. DI 89 at 21 (citing DI 68, Countercls. ¶¶ 108-09). Under California law, it is "unlawful to include a noncompete clause in an employment contract" absent certain exceptions not at issue here. Cal. Bus. & Prof. Code § 16600.1(a). Violations of this anti-noncompete statute can serve as a predicate violation for a UCL claim based on an "unlawful" business practice. *See id.* § 16600.1(c). Here, ImageFIRST argues — and Cintas does not

dispute — that these restrictive covenants violated the anti-noncompete statute. DI 89 at 20-21; *see generally* DI 90.

The second element — "injury in fact" and "lost money or property" — is satisfied because ImageFIRST alleges that it (1) incurred costs responding to Cintas's cease-and-desist letter seeking to enforce an unlawful provision; (2) experienced competitive harms through hampered efforts to recruit Cintas's California-based employees; and (3) lost the benefit of a California employee's services while the scope of the restrictive covenant was being evaluated. DI 89 at 21.

Cintas argues that none of these three injuries satisfy the second element — an element it calls "standing." DI 90 at 12. We disagree. Cintas's first argument is that costs incurred responding to the cease-and-desist letter do not count as an injury in fact because sending that letter was protected conduct under the Petition Clause. But the potential availability of any Petition Clause defense is not material to the injury inquiry. *Id.* That conduct may be protected by the Petition Clause says nothing about whether it is injurious — conduct is frequently injurious but nonetheless protected by the First Amendment. *See, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 74-75, 79-82 (2023) (holding the First Amendment protects harmful threats unless the speaker acted with at least recklessness). Cintas's other argument is that ImageFIRST's remaining two injuries are insufficiently pleaded. DI 90 at 12. We again disagree. Rule 8 requires only a "short and plain statement," not "detailed factual allegations," *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the facts pleaded in ImageFIRST's counterclaims plausibly suggest that the unlawful covenants caused it economic injury by hampering its recruiting efforts and reducing an employee's productivity.

Cintas also argues that ImageFIRST lacks "standing" to bring an "unlawful" UCL claim because it was not a party to the allegedly unlawful employment agreements. DI 84-1 at 19 (citing *Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 WL 3498572, at *5 (N.D. Cal. July 19, 2024)); DI 90 at 12. But the UCL provides a cause of action to any person who "has suffered injury in fact and has lost money or property" because of the act of unfair competition. UCL § 17204. Nothing in the statute requires that a person injured by an unlawful contract be a party to that contract. *Id.* To the extent that the non-binding cases Cintas cites could be read to suggest otherwise, we do not find them persuasive.[3]

**D. ImageFIRST adequately pleads unfair competition under Massachusetts law.**

Cintas presses one basis for dismissal of ImageFIRST's Massachusetts law unfair competition claim — that the alleged conduct did not occur "primarily and substantially within the commonwealth." DI 84-1 at 22 (quoting Mass. Gen. Laws ch. 93A §§ 2, 11) (emphasis omitted). Under the Massachusetts unfair competition law (Chapter 93A), "the burden of proof shall be upon the person claiming that such transactions and actions did *not* occur primarily and substantially within the commonwealth." Mass. Gen. Laws Ann. ch. 93A, § 11 (emphasis added). In other words, Chapter 93A's territorial limitation is an affirmative defense. *See Cunningham v. Cornell University*, 604 U.S. 693, 701-02 (2025) (noting that statutory exemptions are affirmative defenses when the defendant must "plead[] and prove[]" them). Thus, it can serve as a basis for dismissal only when the defense is "apparent from the face" of the counterclaims. *Bethel*, 570 F.2d at 1174 n.10; *see also Kuwaiti Danish Computer Co. v.*

---

[3] Cintas also argues that ImageFIRST lacked standing to bring a claim under Cal. Bus. & Prof. Code § 16600.5(e)(1). Because ImageFIRST's opposition clarified that it was not bringing a claim under this statute, we do not address this argument.

*Digital Equip. Corp.*, 438 Mass. 459, 473 (2003) (holding as a matter of Massachusetts procedural law that courts should examine whether the conduct occurred primarily and substantially in Massachusetts "after making findings of fact").

Here, ImageFIRST has alleged enough Massachusetts conduct to render an extra-territoriality defense unapparent. Specifically, ImageFIRST alleges that Cintas entered into an unenforceable Massachusetts employment agreement with Massachusetts employee Brian Brosnan, that it filed a meritless arbitration to try to enforce that agreement, and that this course of conduct hurt Brosnan's ability to perform his duties as an ImageFIRST employee in Massachusetts. Countercls. ¶¶ 123-25. While some of the allegations underlying this claim appear to reference non-Massachusetts conduct, *e.g.*, *id.* ¶ 123(c), the facts pleaded fall short of establishing an entitlement to dismissal based on an affirmative defense.

**E. ImageFIRST does not plead unfair competition under Pennsylvania law.**

Though the elements of an unfair competition claim under Pennsylvania common law have not been definitively established, Pennsylvania courts often apply the Restatement (Third) of Unfair Competition. *Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*, No. 23-3251, 2025 WL 48332, at *2 (3d Cir. Jan. 8, 2025) (citing *Babiarz v. Bell Atl.-Pa., Inc.*, 2001 WL 1808554, at *9-10 (Pa. Com. Pl. July 10, 2001)). The Restatement defines the elements of the tort as (1) an act of unfair competition by the defendant that (2) harmed the plaintiff's commercial relations. *Id.* at *3 (citing Restatement (Third) of Unfair Competition § 1 (Am. L. Inst. 1995)). Additionally, the plaintiff must be a competitor of the defendant. *Brandywine Village Associates v. Carlino E. Brandywine, L.P.*, 2018 WL 1470124, at *6 (E.D. Pa. Mar. 26, 2018); *see Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995).

Here, the parties' dispute centers on whether they are competitors. Cintas argues that ImageFIRST has made a binding judicial admission that the two companies are not competitors by denying that they compete for customers in its answer to Cintas's affirmative claims. DI 84-1 at 23-24. ImageFIRST counters that companies are competitors because they compete for employees in the labor market, even if they do not compete for customers. DI 89 at 28-29. We are not persuaded by ImageFIRST's argument. To be competitors for purposes of the unfair competition tort, companies must "supply[] similar goods or services." *E.g.*, *Giordano v. Claudio*, 714 F. Supp. 2d 508, 523 (E.D. Pa. 2010) (quoting *Granite State*, 57 F.3d at 319); *Brandywine*, 2018 WL 1470124, at *6. Businesses supply goods and services to the consumer market, not to the labor market. In the labor market, the employee is the supplier of services while the employer is the purchaser. *See Eichorn v. AT&T Corp.*, 248 F.3d 131, 142 (3d Cir. 2001), *as amended* (June 12, 2001). Accordingly, we agree with Cintas and will dismiss ImageFIRST's Pennsylvania unfair competition counterclaim.

**F. We will dismiss ImageFIRST's claims for attorneys' fees.**

ImageFIRST does not dispute that its claims for attorneys' fees under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D), and Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5305(1), are properly pursued by motion under Federal Rule of Civil Procedure 54(d)(2) rather than as independent counterclaims. DI 89 at 29-30. We will therefore formally dismiss these counterclaims and assess whether attorneys' fees are warranted if ImageFIRST files a Rule 54(d)(2) motion at the appropriate time.

## V. CONCLUSION

We grant Cintas's motion to dismiss ImageFIRST's California UCL "Unfair" counterclaim (Count I), Pennsylvania common law unfair competition counterclaim (Count IV), Defend Trade Secrets Act counterclaim (Count V), and Pennsylvania Uniform Trade Secrets Act counterclaim (Count VI). Because ImageFIRST has not yet amended its counterclaims, we dismiss the Pennsylvania common law unfair competition counterclaim and California UCL "Unfair" counterclaim without prejudice. We dismiss the Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act counterclaims with prejudice because amendment would be futile. This dismissal does not preclude ImageFIRST from seeking attorneys' fees under these laws by motion at the appropriate time. We deny Cintas's motion to dismiss the remaining counterclaims. An appropriate order will follow.